[File No. 5949.]

F. E. McCURDY, Respondent, v. E. A. HUGHES, George D. Mann, and Edward B. Cox, Appellants.

(237 N. W. 748.)

236

Opinion filed July 22, 1931.

*O'Hare, Vox & Cox,* for appellants.

*Scott Cameron,* for respondent.

BIRDZELL, J. This is an action to recover damages for libel. The defendants filed separate demurrers to the complaint, all of which were overruled. Each of them appeals from the order overruling his demurrer. All defendants being represented by the same counsel on appeal submit the matter in this court in one argument. So, but one opinion is necessary in making a disposition of the case. The complaint, omitting title and verification, is as follows:

**1.**

"That the plaintiff was on or before this date and for many years an attorney at law practicing in the several courts of record in the state of North Dakota, duly admitted to practice therein as such attorney and also admitted to practice in the United States Court of this state and of the Eighth Circuit and had practiced his profession and still continues to practice his profession as such attorney at law in the several courts of record in this state and in the United States court and had always as such attorney at law conducted and demeaned himself with honesty and fidelity and had never been guilty or suspected to have been guilty of any misconduct or malpractice in his said capacity and profession as an attorney at law and had thereby come to enjoy and did enjoy a good name and reputation as an attorney at law.

**2.**

That for four years prior to the 7th day of January, 1929, the said plaintiff was the duly elected, qualified and acting state's attorney of Burleigh County, North Dakota and as such enjoyed an unusually wide acquaintance.

**3.**

That on or about the 12th day of January, 1929, at Bismarck, the defendants caused to be made a certain affidavit, which is annexed hereto, marked exhibit 'A' and made a part hereto by reference as completely as though the same were set out in full, and caused the same and references thereto to be published in The Bismarck Tribune, and by the associated press and the subscribers to its service and also caused to be written a certain comment by way of editorial and news comment and caused great headlines to be written in the Bismarck Tribune which said headlines and news matter and editorial matter are set out on exhibit 'B' attached to and made a part of this complaint by reference as completely as though set out in the body herein and which said affidavit and words concerning the plaintiff and said editorial comment and said news item were written of and concerning the plaintiff in his said capacity and profession as an attorney at law

and his past record as state's attorney of Burleigh County, North Dakota.

4.

. That the defendants meant. thereby to accuse and did accuse the plaintiff of violating his oath as an attorney at law and of violating his integrity as an attorney at law and as state's attorney of Burleigh County, North Dakota and of in effect selling out his clients and it was intended by the defendants to communicate to and cause the general public to believe that the plaintiff was dishonest and unfaithful to his trust as an attorney at law and as state's attorney of Burleigh County, North Dakota.

5.

That said publication was false and defamatory and was made maliciously and with full knowledge on the part of the defendants and each of them of its falsity and the said publication was not a matter which was of public record and was not privileged in any way, all of which was well known by the defendants at the time of said publication, and by means thereof the defendants intended to maliciously injure and defame the plaintiff in his reputation and in his business and by means thereof the plaintiff was and is greatly injured, humbled, humiliated and prejudiced in his reputation as aforesaid and has also lost and been deprived of great gains and profits which would otherwise have arisen and accrued to him in his profession and business, and has suffered grievous mental suffering to his damage in the sum of twenty-five thousand dollars actual damages and fifty thousand dollars exemplary and punitive damages.

Wherefore, the plaintiff demands judgment against the defendants for the sum of twenty-five thousand dollars actual damages and fifty thousand dollars exemplary and punitive damages and for the costs and disbursements of this action.

Dated this 16th day of April, 1930."

240

## EXHIBIT "A"

## BEFORE THE STATE BAR BOARD

Re: F. E. McCurdy, Attorney at Law,
Bismarck, North Dakota

State of North Dakota  } ss.:
County of Burleigh.

E. A. Hughes, being first duly sworn, says: That he is now and has been for many years last past a taxpayer of Burleigh County, North Dakota, and that prior to January 1, 192— he had been a resident and citizen of the State of North Dakota for many years residing at Bismarck, North Dakota.

That for several years last past there has been pending before the Board of County Commissioners of Burleigh County, in the District Court of Burleigh County and in the Supreme Court of this state in various manners a case commonly known as the Patterson tax case involving the assessment of the E. G. Patterson properties located in the City of Bismarck, North Dakota. That, briefly stated, the said E. G. Patterson obtained a very substantial reduction of his taxes from the Board of County Commissioners of Burleigh County, at one time several years ago. That immediately thereafter this affiant, together with other taxpayers of Bismarck, Burleigh County, exceeding seven in number, petitioned F. E. McCurdy, then State's Attorney of Burleigh County, pursuant to the provisions of Section 3298, Compiled Laws of North Dakota for the year 1913, to take an appeal to the District Court of Burleigh County from the action of the Board of County Commissioners of said County in granting aforesaid abatement and reduction in taxes to the said E. G. Patterson. That aforesaid petition of said taxpayers is on file in the office of the Clerk of the District Court of Burleigh County. That pursuant to aforesaid petition the said F. E. McCurdy took an appeal from said decision of the Board of County Commissioners to the District Court of Burleigh County, and that to the best knowledge, information and belief of this affiant, the matter was first heard before Judge Kneeshaw and that said Judge decided that an appeal would not lie in said case. That thereupon an

appeal was taken to the Supreme Court of this state and the order of Judge Kneeshaw was reversed and the case sent back for retrial in the District Court of Burleigh County. That the Honorable G. Grimson was assigned by the Supreme Court to hear and determine the issues in said case. That early in the year of 1928 Judge Grimson heard said case at which time E. G. Patterson was represented by his attorneys, Messrs. Sullivan, Hanley and Sullivan of Mandan, North Dakota, and the aforesaid taxpayers were represented by F. E. McCurdy, the State's Attorney of Burleigh County, and Zuger and Tillotson, special counsel for said taxpayers. That Judge Grimson took said case under advisement. That in July, 1928, Judge Grimson handed down his memorandum opinion in which he fixed the amount of taxes, penalty and interest which he deemed that E. G. Patterson should pay to Burleigh County in addition to the sum which Mr. Patterson had already paid as the result of the abatement and reduction of taxes granted Mr. Patterson by the Board of County Commissioners of Burleigh County. That this affiant is not informed as to the exact amount of additional taxes which Judge Grimson's memorandum opinion required Mr. Patterson to pay, but that he has been informed that said sum of additional taxes would be between $18,000 and $20,000. That some time after Judge Grimson's memorandum was handed down, this affiant inquired of F. E. McCurdy in substance if any steps had been taken for enforcing the payment of the said taxes as had been determined to be due by Judge Grimson, and that the said F. E. McCurdy told this affiant at that time that he could do nothing at the present time to enforce the payment of the taxes because an appeal from Judge Grimson's decision had been taken by the attorneys for Mr. Patterson. That this affiant paid no more attention to this matter until November, 1928, and until he had occasion, in the month of November, to confer with the said F. E. McCurdy regarding an entirely different matter. That at said time, after disposing of his other business with Mr. McCurdy, this affiant inquired of Mr. McCurdy as to the status at that time of the so-called Patterson tax case. That Mr. McCurdy replied that he had intended to see this affiant before and tell him of something new that had come up in connection with said case and he informed this affiant that the Board of County Commis-

sioners on November 16, 1928, had adopted a resolution relating to the said Patterson tax case and that said resolution had been proposed to said Board by one of the attorneys for Mr. Patterson and Mr. Mc-Curdy further stated to this affiant that probably he would be compelled to follow the instructions and directions of the Board of County Commissioners of Burleigh County and to sign the stipulation referred to therein.

That thereafter this affiant made and caused to be made an investigation of the records and facts in connection with the status of the so-called Patterson tax case at that particular time. That from such investigation this affiant found that the Board of County Commissioners, on November 16, 1928, adopted the following resolution:

'November 16, 1929
Adopted

Moved by Com. Moynier and seconded by Com. Soder that the State's Attorney be and he is hereby authorized and directed to enter into a stipulation on behalf of Burleigh County with counsel for E. G. Patterson in connection with the Patterson tax case by the terms of which the county will receive the full amount of the principal additions made by Judge Grimson to the previous compromise, without interest thereon. Former interest payments shall not be considered except $1,119.88 credit shall be given. Mr. Patterson shall pay the following itemized items.

This action is taken subject to the approval and direction of Judge Grimson.

| Less | $34,456.35 | $ 7,587.20 |
|------|-----------|-----------|
|      | 1,119.88  | 9,091.49  |
|      | $35,576.23 | 9,236.40  |
|      |           | 10,474.74 |
|      |           | 9,331.71  |
|      |           | $45,721.54 |
|      |           | 35,576.23 |
|      |           | $10,145.31' |

Affiant further learned that although the memorandum opinion of Judge Grimson had been handed down in July, 1928, that no findings of fact, conclusions of law or order for judgment had ever been prepared or submitted to Judge Grimson by F. E. McCurdy, state's attorney of Burleigh County, up to the first of December, 1928, and that so far as this affiant knows, or can learn, no findings of fact, conclusions of law or order for judgment have since that time. been submitted to Judge Grimson by F. E. McCurdy, or any other persons in his behalf or in behalf of the taxpayers.

That the affiant consulted other counsel as to the right of the Board of County Commissioners in this case to direct F. E. McCurdy to enter into the stipulation referred to in the resolution of the Board of County Commissioners of Burleigh County, as above set forth. That aforesaid counsel advised this affiant that in their opinion Mr. McCurdy was not representing the Board of County Commissioners of Burleigh County in this proceeding, but was representing the taxpayers who petitioned him to take the aforesaid appeal. That inasmuch as the appeal was taken from a decision of the Board of County Commissioners which the taxpayers deemed detrimental to the best interests of the County that it would be absurd to hold that the Board of County Commissioners had any authority or power to direct the action of the said F. E. McCurdy as attorney for the taxpayers in said proceeding. That this affiant thereupon requested and directed said counsel in behalf of himself and six other of the original petitioning taxpayers, to write the said F. E. McCurdy setting forth counsel's conclusions, as above stated, and protesting to Mr. McCurdy against his signing the stipulation above referred to. That said letter was mailed to F. E. McCurdy at Bismarck, North Dakota, on November 24, 1928, and this affiant is informed was received by Mr. McCurdy on the 25th day of November, 1928.

That during the latter days of December, 1928, and shortly before F. E. McCurdy ceased to be state's attorney of Burleigh County, said F. E. McCurdy against the protests and contrary to the desires of this affiant and six other of the original petitioning taxpayers, knowing that said taxpayers were opposed thereto and had instructed him to the contrary, did enter into and sign a stipulation with the attorneys for E. G. Patterson, as authorized and directed by the resolution of

the Board of County Commissioners, hereinbefore set forth. That said stipulation so signed by F. E. McCurdy and the attorneys for E. G. Patterson, was submitted to the Honorable G. Grimson, the Judge as signed by the Supreme Court to hear the aforesaid Patterson tax case.

That at the primary election held in Burleigh County in June, 1928, the said F. E. McCurdy was a candidate for nomination for the office of state's attorney of Burleigh County and that at said primary election said F. E. McCurdy was one of the two candidates for aforesaid office receiving the highest number of votes, and thereupon became one of the two candidates for the office of state's attorney of Burleigh County at the general election held on November 6th, 1929. That for many years last past it has been a matter of common knowledge, also known to this affiant personally, that said F. E. McCurdy and E. G. Patterson have been political enemies and that the said E. G. Patterson has consistently been an opponent of F. E. McCurdy as a candidate for the office of state's attorney in Burleigh County at elections prior to those held in 1928. That this affiant has been informed and upon such information states that prior to the general election held on November 6, 1928, the aforesaid E. G. Patterson supported and worked for the election of F. E. McCurdy as state's attorney of Burleigh County.

That this affiant states that the aforesaid F. E. McCurdy wilfully, knowingly and in direct violation of his duty and his oath of office as an attorney at law and as state's attorney of Burleigh County, contrary to the wishes and directions of his clients, the aforesaid seven taxpayers of Burleigh County, entered into and signed the aforesaid stipulation in the so-called Patterson tax case. That this affiant further states upon information and belief that the said F. E. McCurdy, prior to the election held on November 6th, 1928, entered into some sort of an arrangement or agreement with the aforesaid E. G. Patterson whereby and whereunder the said F. E. McCurdy agreed with the said E. G. Patterson that in exchange for the support of the said E. G. Patterson for the said F. E. McCurdy's candidacy for office of state's attorney of Burleigh County at the election to be held on November 6th, 1928, he, the said F. E. McCurdy would, although he well knew he was attorney for the taxpayers in the Patterson tax case, aid the said

E. G. Patterson in obtaining a modification of the memorandum decision of Judge Grimson to the end that the taxes of the said E. G. Patterson would be further reduced, and that pursuant to such unlawful and unethical arrangement and agreement, the said F. E. McCurdy failed and neglected to draw up and submit findings of fact, conclusions of law and order for judgment to Judge Grimson in the above described case and eventually signed the aforesaid stipulation.

Wherefore: This affiant presents this affidavit and complaint to the state bar board of the state of North Dakota for appropriate action, and further respectfully states to said board that he is ready and willing to appear before said board and give oral testimony under oath concerning the matters and things hereinbefore set forth.

E. A. Hughes.

Subscribed and sworn to before me this 11th day of January, 1929.

H. F. O'Hare,
Notary Public, North Dakota.

EXHIBIT "B"

M'CURDY ABANDONED
INTERESTS OF CLIENT
IS HUGHES' CHARGE

Complaint Filed With State Bar
Board Against Former Bur-
leigh State's Attorney

IS PATTERSON CASE ANGLE

Bismarck Capitalist Charges
Former Political Enemies Be-
came Friendly in Election

Complaint charging F. E. McCurdy, until this month state's attor-

ney of Burleigh County, with abandoning the interests of his clients in the Patterson tax case has been filed with the state bar board by E. A. Hughes local capitalist.

The complaint opens the way for an investigation by the bar board of McCurdy's actions in the case and if Hughes' charges are sustained the board would be expected to take appropriate action.

Hughes was one of seven taxpayers who objected to a settlement by E. G. Patterson, local hotel owner and political leader, of taxes assessed against his property. Patterson was for years a member of the board of county commissioners. He was defeated for re-election two years ago and the question was raised as to payment of delinquent taxes which he was alleged to owe the county.

## Said Tax Excessive

Patterson contended that the taxes were excessive and entered into an arrangement with the county commissioners whereby abatements were granted. A committee of taxpayers, led by Hughes, protested the agreement and petitioned McCurdy, then state's attorney, to appeal the adjustment to the Burleigh County district court.

This began a series of legal maneuvers which apparently ended last July when Judge G. Grimson, assigned by the supreme court to hear the case, fixed the amount of taxes which Patterson was to pay. In his complaint Hughes says this amount was $18,000 to $20,000 more than Patterson's agreement with the county commissioners.

Hughes charges, however, that McCurdy never took steps to make this judgment effective and that late last December he signed a stipulation with attorneys for Patterson whereby the latter received a substantial reduction in the amount of taxes to be paid as fixed by Judge Grimson. This stipulation, the complaint states, was entered into in accordance with a resolution passed by the county board directing McCurdy to take such action.

## Abandoned His Clients

The complaint charges that McCurdy had no right to obey the county board in this case, since he already was representing the committee of

protesting taxpayers and that in doing so he abandoned his clients, the taxpayers committee.

Hughes charges that, in consideration of his friendly action in the tax case, Patterson accorded McCurdy political support in the last campaign although previously they had been political enemies.

The meat of Hughes' charge is contained in the statement made in the complaint, that McCurdy, wilfully, knowingly and in direct violation of his duty and his oath of office as an attorney at law and as state's attorney of Burleigh County—entered into and signed the aforesaid stipulation in the so-called Patterson tax case.

## Will States Stand

George F. Will, chairman of the board of county commissioners, said today that McCurdy's action in entering into the stipulation will have no bearing on the outcome of the case, which still is in the hands of Judge Grimson. The board entered into the arrangement, he said, to indicate to Judge Grimson that such a settlement would be satisfactory to it. The desire of the board he said, was to get the case finally cleared up and out of the way.

The argument on how much is due centers around the interest on delinquent taxes which Patterson should be required to pay. The interest amounts to practically as much as the principal.

Attorneys for Patterson contend, Will says, that no interest charge should be made after the time that Patterson offered a settlement of the case in 1922 and they indicated to the board that Judge Grimson was willing to have the matter adjusted on that basis.

## Grimson Doesn't Agree

Will, however, has received a letter from Judge Grimson in which the latter indicated that he had not approved such a proposal, Will said.

Will expressed doubt that Hughes' charges against McCurdy were justified in view of the fact that McCurdy expressed no opinion as to the advisability of making the adjustment and represented the county board only to the extent of seeing that the stipulation and resolution were in final form. The resolution was so drawn, Will said, as to

require the approval of Judge Grimson to make it effective. As a result the case has not actually been settled but remains in the hands of the district court, he said.

J. H. Newton, secretary of the bar board, today declined to comment on the case or to verify that a complaint had been filed saying it is against the policy of the bar board to make public matters pending before it. Information on the case was given out by Cox, O'Hare and Cox, Attorneys for Hughes.

In a statement McCurdy said: 'This is the first I have heard of anything of this kind, but I will say that I have done nothing and left nothing undone which could constitute a just ground for such a procedure. When the parties give me an opportunity to see the papers and find what it is all about I will meet it.'

## Sullivan's Statement

John Sullivan, Mandan, attorney for Patterson, said 'the charges made by Hughes against McCurdy, before the bar board are, of course, simply without foundation in fact. Hughes has entirely overlooked the stipulation that McCurdy actually entered into with reference to this tax case.

The stipulation that McCurdy actually entered into is much broader, and gives to the county of Burleigh, many advantages that the order of the county board did not specifically provide for.

As a matter of law and of fact, the only question that was properly submitted to Judge Grimson was the question of whether or not the original resolution, compromising with Mr. Patterson on his taxes, was in excess of their proper discretion as the fiscal agents of the county.

From the decision of Judge Grimson, Mr. Patterson had the legal right to appeal to the supreme court, he had the right to insist that he receive back from the county, over $40,000 that he paid in connection with the compromise if the compromise was not sustained by the court, together with interest thereon, he had the right to test in separate litigation the validity of each assessment, he had the right to set aside the sales of his property which had been made under these absolutely invalid levies.

No lawyer in this county or in this state, who has given any time

to the subject of taxation, will contend for a moment that the tax sales of the Patterson properties are anything but absolutely void, if for no other reason, than that when the sales were had the property was sold for both the general tax and the special improvements and one certificate of sale issued. Our supreme court has specifically held such sales to be absolutely void. In other words this litigation pending before Judge Grimson, was but the beginning of a course of possible litigation, which, if the matter was not in some amicable manner adjusted, seemed to be almost limitless.

In McCurdy's stipulation with us, he not only followed the instructions of the board of county commissioners, but in addition he insisted upon our foreclosing and giving up all other rights that we had in the matter, only a portion of which are above outlined.

### Insisted on Agreement

McCurdy insisted upon an agreement to pay an additional sum of nearly $10,000, provided that we pay it immediately upon the entry of judgment, required that we give up every legal right that we had to attack the validity of the tax, provided that we give up our right to appeal, and in fact the stipulation is so worded that the only right Mr. Patterson retains is to get a release of other claims for taxes during those years involved upon the payment of the additional sum of nearly $10,000 over and above the forty thousand that he had previously paid on the previous compromise.

Frankly, I think Burleigh County made a very good deal, and that the county commissioners and McCurdy used rare business judgment in entering into this stipulation, which in short provides for not only $10,000 additional cash, but entirely ends the possibility of further expensive litigation.'

The complaint in full follows."

To the above complaint each defendant demurred on the ground (1) that the complaint does not state facts sufficient to constitute a cause of action; and (2) that it does not state facts sufficient to constitute a cause of action for the following reasons: (a) That it does not state facts sufficient to constitute a joint cause of action against the demurrant and the other two defendants; (b) That it does not state a cause

of action for the publication of an alleged libel; (c) In the demurrer of Hughes, that it does not set forth what alleged writing or representations were made by him concerning the plaintiff which are alleged or claimed to be libelous; in the demurrers of Mann and Cox, that no facts are pleaded alleging that the defendant made any writing or representation concerning the plaintiff whether libelous or not; (d) In the demurrers of Mann and Cox, that it does not set forth what alleged writing or representations were made by the demurrant concerning the plaintiff which are alleged or claimed to be libelous; and (e) In the demurrers of Mann and Cox, and (f) in the demurrer of Hughes, that the complaint does not state what writing or representation alleged to have been made by the demurrant concerning the plaintiff accused the plaintiff of violating his oath as an attorney at law, and/or of violating his integrity as an attorney at law and as state's attorney of Burleigh county, and/or selling out of his clients, and/or of causing the general public to believe that the plaintiff was dishonest and unfaithful to his trust as an attorney at law and as state's attorney of Burleigh county, North Dakota.

The contentions of the appellants, as stated in their brief, are as follows:

"1. The complaint does not plead any facts alleging that the defendants Mann or Cox made any writing or representation concerning this plaintiff, whether libelous or not.

2. The plaintiff does not plead any facts alleging publication by the defendants of libelous matter.

3. The plaintiff does not plead any facts indicating a publication of the alleged libel concerning the plaintiff.

4. The complaint does not state any facts which disclose a joint cause of action against the defendants.

5. The complaint does not allege or designate specific statements constituting an alleged libel concerning the plaintiff."

The first three of the contentions are consolidated in the argument and rest on the basic proposition that the complaint does not allege facts showing publication but merely states what the appellants term a conclusion of law to the effect that the defendants caused a certain

affidavit to be made "and caused the same and references thereto to be published."

Since the complaint incorporates Exhibit A, which is a lengthy affidavit purporting to have been made by the defendant Hughes, and since this affidavit apparently contains the language which is the basis for the defamation claimed by the plaintiff, it is argued that the complaint omits a vital allegation of fact in failing to allege that the affidavit was published by any of the defendants. The omission is said to be all the more glaring and vital in the instance of the appellants Mann and Cox in that the complaint (with the incorporated affidavit) shows on its face that whatever libelous matter was published, if any, was published, was published by the other defendant. The contention in brief is that the complaint is altogether lacking in allegations of publication and that it shows on its face merely that the pleader has drawn an erroneous conclusion of law from such facts as are pleaded when he has said in the complaint that the defendants *caused* Exhibit A to be published.

By statute in this state pleadings are required to be liberally construed with a view of substantial justice between the parties (Comp. Laws 1913, § 7458), and this rule is applied where a complaint is attacked by demurrer. Weber v. Lewis, 19 N. D. 473, 34 L.R.A. (N.S.) 364, 126 N. W. 105; Northern Trust Co. v. First Nat. Bank, 25 N. D. 74, 140 N. W. 705; Cammack Piano Co. v. Western Surety Co. 56 N. D. 262, 216 N. W. 561; Olsness v. State, 58 N. D. 20, 224 N. W. 913.

Construing the complaint with reasonable liberality, as we are required to do upon demurrer, we are of the opinion that the above contention of the appellants is not well founded. It is, of course, essential that the complaint should allege publication. While it does not contain in direct language the allegation that "the defendants did publish of and concerning the plaintiff" et cetera, it does say they "caused . . . to be published." Of course, an allegation that the defendants published libelous matter concerning the plaintiff would be supported on the trial by proof that it was published at their direction or upon their instigation. As is said in Newell on Slander & Libel, 4th ed. § 176, "It is not necessary that the publication of a libel should be effected solely or directly by the author of it personally. For if

a person having printed or written a defamatory statement parts with it in order that its contents may become known, or if a person communicates to a third person a libel hitherto unknown, either proceeding will amount to a publication by the former. The legal maxim applicable to such cases is the well-known one, *qui facit per alium facit per se*: he who does a thing by the instrumentality of another does it by himself—a rule expressive of the force of agency, and adopted alike by the criminal and the civil branches of our law." See also 37 C. J. 13. It would not be necessary, then, to show that the defendants were interested as proprietors or managers of the medium of publication, but it would be sufficient to prove facts showing that they employed the medium as an agency of publicity and in this manner caused the libel to be published. If this would be a sufficient proof of a direct allegation of publication, a complaint, which is in form even a truer index to the character of evidence relied upon to show publication, is certainly good as against a general demurrer. The expression "caused to be published" includes both the idea of publication and responsible direction or agency. It is not necessary to employ a technical form of words in charging a publication of a libel. It is sufficient if the words used may reasonably be construed as charging a publication. Baldwin v. Elphinston, 2 W. Bl. 1037, 96 Eng. Reprint, 610. We are of the opinion that the allegation is not a conclusion of law but of an ultimate fact. It is, of course, unnecessary for the plaintiff to plead the evidence by which he would expect to establish the manner in which any particular defendant had become responsible for the publication.

Neither can we agree with the contention that the pleading on its face negatives any connection of the defendants Mann and Cox with the publication, for the reason that the affidavit purports to be the affidavit of the other defendant only. Proof that the defendant making the affidavit was merely carrying out a concerted plan in which all the defendants joined, would be perfectly consistent with and in no way contrary to the allegations of the complaint.

Neither, upon demurrer, are we concerned with any question of privilege as to one or more defendants, for this is a matter of defense. 17 R. C. L. 401.

By way of emphasizing the lack of allegations in the complaint to

connect the defendants Mann and Cox with the publication of the alleged defamatory matter, it is pointed out that their names nowhere appear in the complaint, except in the title, and that the various allegations are only made applicable to them through the use of the plural number where the word "defendants" appears in the body of the complaint. Thus, it is said that without changing a word in the complaint, it might be made applicable to any number of individuals by merely inserting their names in the title, the complaint being wholly lacking in allegations descriptive of the connection of any of the defendants with the matters complained of. Neither the description of the defendants, nor the capacity in which they might have acted, is essential to the statement of a cause of action against them. If the body of the complaint had been drawn with meticulous care so as to include beyond peradventure every material allegation necessary to state a good cause of action against named defendants, it would be equally open to this criticism. It is only necessary to allege what the defendants did; not the evidence to prove it. The criticism does not reach to any vital element of the pleading.

It is next argued that if the complaint be assumed to contain allegations of the publication, it is still lacking in an essential particular in that it does not allege that the medium or mediums of publication were instrumentalities through which publication could be effected. The allegation is "caused the same and references thereto to be published in The Bismarck Tribune, and by the associated press and the subscribers to its service and also caused to be written a certain comment by way of editorial and news comment and caused great headlines to be written in The Bismarck Tribune which said headlines and news matter and editorial matter are set out on exhibit 'B' attached to and made a part of this complaint by reference as completely as though set out in the body herein. . . ." It is true there is no allegation as to what The Bismarck Tribune is. So far as the complaint is concerned, it may be a newspaper or a document file, and neither is there any allegation as to what is meant by the associated press, the words not even being capitalized so as to clearly indicate a well known news gathering agency. By applying the rule of liberal construction, we think it must be assumed as against general demurrer that the agencies of publication referred to might well be taken, in one instance, to

be the oldest daily newspaper in the state, and in the other an agency familiar to everyone who reads a newspaper. If the complaint is conceived to be indefinite as to the manner of publication, this should be reached by a motion to make more specific rather than by a demurrer. Dick v. Northern P. R. Co. 86 Wash. 211, 150 Pac. 8, Ann. Cas. 1917A, 638.

Coming now to the fourth contention, it is said that the complaint does not state any facts which disclose a joint cause of action against the defendants. As indicated above, it is not essential that the evidence connecting each defendant with the publication be pleaded. It is sufficient that the complaint charge each defendant with responsibility for the publication and, as we are of the opinion that it does so in this instance, it follows that the complaint states the same cause of action against all of the defendants. The complaint, as we construe it, conforms to the rule stated in 17 R. C. L. 379, relied upon by the appellants, in that it does sufficiently appear that each of them is charged with the alleged publication.

This brings us to the last contention of the appellants, namely, that the complaint does not allege or designate the specific statements constituting what is claimed to be a libel of the plaintiff. It will be noted that paragraph 3 of the complaint charges the publication of a certain affidavit and of certain editorial and news comment, the affidavit, editorial and news comment being incorporated in Exhibits A and B, which are attached to and made a part of the complaint. It is said only in this paragraph that they were written of and concerning the plaintiff in his capacity and profession as an attorney and his past record as state's attorney of Burleigh county, North Dakota. This paragraph is followed by another containing what may be denominated innuendo. It says that defendants meant thereby to accuse and did accuse the plaintiff of violating his oath as an attorney at law and of violating his integrity as an attorney at law and state's attorney of Burleigh county, of in effect selling out his clients, and that it was intended to communicate to and cause the general public to believe that the plaintiff was dishonest and unfaithful to his trust as an attorney at law and state's attorney of Burleigh county. Then follows a paragraph alleging "that said publication was false and defamatory and

was made maliciously and with full knowledge on the part of the defendants and each of them of its falsity," et cetera.

It is urged that the complaint is so drawn as to put the burden upon the defendants of selecting from the entire publication the words or matters that are thought by the plaintiff to be false. It is said that since the justification must be as broad as the charge of falsity, in case the defendants should desire to rely upon the truth of the publication with good motives as a defense, to be safe, they would be compelled to justify the entire publication. They say the plaintiff cannot properly cast this burden upon them and that his complaint should not when reasonably construed be held to charge all the matter in the publication to be false and, hence, in the absence of a charge as to the falsity of some particular matter, it ought to be assumed on demurrer that no false statements are charged.

In McCue v. Equity Co-op. Pub. Co. 39 N. D. 190, 198, 167 N. W. 225, 228, this court said:

"It is elementary that a demurrer admits the truth of all issuable, relevant, material facts well pleaded. 31 Cyc. 333; 6 Enc. Pl. & Pr. 334; 6 Standard Proc. 943. Hence a general demurrer to a complaint in an action for libel 'admits allegations of falsity and publication and malice and the correctness of the innuendoes as averred in the petition, unless the innuendo attributes a meaning to the words which is not justified by the words themselves or by the extrinsic facts with which they are connected.' 25 Cyc. 469; 13 Enc. Pl. & Pr. 91, 92. And such demurrer 'will be overruled if any of the words laid therein are actionable.' 25 Cyc. 468."

On this demurrer we are concerned only with the substance of the pleading, not with its form. When the complaint is read as a whole and construed with fair liberality, it manifestly charges the defendants with publishing statements concerning the plaintiff to the effect that while employed in a capacity in which it was his duty to represent certain taxpayers in litigation between a public corporation and a certain third party, he (the plaintiff), to further his own political interests and disregarding a duty he as an attorney owed to his clients, took or wrongfully participated in the taking of certain steps in the litigation adverse to them and to the advantage of such third party. In short, it charges that he was false to his trust. Such a charge is, of

course, libelous. The complaint, in addition to setting forth language in which this charge is made, sets forth much colloquial and redundant matter indicating the connection in which the charge was made, and it also alleges that the "publication" was false. We think a reasonable interpretation of the complaint, which we are forced to adopt for the purposes of the demurrer, is that the defamatory charges in the publication are false. The allegations are not as clear and concise as they should be, but when all are considered together and the complaint is given a fairly liberal interpretation we think it apprises the defendants of the basis of the plaintiff's claim against them and that it contains every element of a cause of action. In so far as it is ambiguous or uncertain, particularly in its charge of falsity of statement, the defendants have a remedy by motion rather than by demurrer.

It follows from what has been said that the order appealed from is right, and it is affirmed.

CHRISTIANSON, Ch. J., and BURKE, NUESSLE, and BURR, JJ., concur.