# No. 13,353.

INDUSTRIAL COMMISSION ET AL. *v.* MOYNIHAN.
(32 P. [2d] 802)

Decided January 22, 1934. Rehearing denied March 19, 1934.

Mr. PAUL P. PROSSER, Attorney General, Mr. MORRIS S. GINSBERG, Assistant, Mr. HAROLD CLARK THOMPSON, for plaintiffs in error.

Mr. GEORGE A. CROWDER, Mr. HORACE N. HAWKINS, Mr. HORACE N. HAWKINS, JR., for defendant in error.

*En Banc.*

MR. JUSTICE HILLIARD delivered the opinion of the court.

A PROCEEDING under the Workman's Compensation Act before the Industrial Commission. On reference the finding was favorable to the claimant, but on review the commission ruled adversely. In the district court, whence this writ is prosecuted by the commission and employing corporation, the claimant prevailed, and the commission was ordered to determine the extent of disability and fix compensation.

It appears that claimant is an attorney, residing and having his office at Montrose; that the Oliver Power Company is a public utility corporation, operating an electric light and power plant at Paonia; that claimant was employed by the company on a monthly retainer, with per diem and expense allowance when engaged away from his office; that claimant's duties consisted in counseling and advising generally with reference to the policy, business affairs and legal rights of the company, and in procuring franchises, rights of way, and certificates of public necessity and convenience; that some of the service rendered by claimant was of the character in which only a licensed attorney might engage, but some of it, as seems to be conceded, and of great import, could properly have been undertaken by a nonmember of the bar; that in the interest of extending its business, and shortly before the happening on which claimant bases his demand for compensation, the company required a certificate of convenience and necessity, and to that end it made application to the Public Utility Commission; that hearing thereon was set for August 18, 1931, on which day, and the succeeding day, by direction of the company, claimant appeared for it and presented its cause before the commission; that at the conclusion of the hearing the commission took the matter under advisement, and the company, sensing the possibility of an adverse holding, directed claimant to make immediate preparation to institute a proceeding in court in its behalf, to which claimant devoted himself in Denver until early afternoon of the next day, when he started for Montrose by automobile,

where he was to conclude his work in that regard, and, if necessary, file suit in the district court; that on the way to Montrose, the car claimant was driving was accidentally overturned and he was seriously injured: that claimant's sole mission on the trip to Denver, while there and when returning, was to serve the company pursuant to his general contract of employment. It further appears that the company is an employer of more than four employees, and is insured in the state compensation insurance fund; and that claimant is in general practice, conducting his office wholly apart from the company, and serving many clients.

Briefly, plaintiffs in error contend the court erred in holding claimant was an employee of the company, or, if an employee, in not holding he was a casual employee whose employment was not in the usual course of business of the company; and that he was an independent contractor. Order of presentation will not be observed, but in the course of our discussion the points will be determined.

 By section 4383, subparagraph (b), C. L. 1921, amended, Session Laws, 1931, p. 819, it is provided that the term "employee" includes "every person in the service of any person, association of persons, firm, private corporation, including any public service corporation, * * * under any contract of hire, express or implied, * * * but not including any persons who are expressly excluded from this act or whose employment is but casual and not in the usual course of trade, business, profession or occupation of his employer." Mainly, those "expressly excluded" are domestic servants and farm and ranch laborers. Subparagraph (c), §4382, C. L. 1921. In none of the provisions of the act is there language which expressly excludes members of the professions, attorney or other, if otherwise within the statute, from the enjoyment of its protecting purpose. There is authority to the effect that those equipped to render professional services, and doctors, nurses and lawyers are so considered, if especially employed in particular instances, are inde-

pendent contractors and may not have relief by virtue of compensation legislation. 1 Schneider Workmen's Compensation Law (2d Ed.), p. 198; *Matter of Renouf v. N. Y. C. R. R. Co.,* 254 N. Y. 349, 173 N. E. 218. In the Renouf inquiry the claimant was a nurse, and although she was engaged by the railroad company to render services to an injured employee, and "was, in a general sense, employed by the railroad company, she was not its employee. She occupied the position of an independent contractor following her own calling rather than that of one in the service of the employer." The New York court observed, however, that "A distinction may be drawn between a special nurse and one who places her time and service at the call of her employer without regard to special cases." Citing *Matter of Bernstein v. Beth Israel Hospital,* 236 N. Y. 268, 140 N. E. 694. We think the claimant here comes within the recognized distinction. He was employed by the power company regularly, and by the terms of the employment his time and services were subject to the call of his employer. Not only so, but the record shows that to the exclusion of all others he was called upon to serve as and whenever the company considered it had need for services he was qualified to render. Nor may it be said that the matter which engaged his attention when he suffered the accident, was the result of special employment. He represented the company generally, not specially, and in advocating its cause before the Utility Commission at an appointed time and for a particular certificate, and for compensation agreed to be paid at the time of his general engagement by the company, he was and continued to be a general employee. It was neither the first nor only time he had served the company in its quest for a certificate of necessity and convenience. That such certificates were not less essential to the ongoing of the company's business than was the manufacture of its product, may not be questioned, and the employment of claimant to procure the necessary authority to do business, in the circumstances of the rec-

ord, was not any more special than was the employment of a workman required to perform duties at the company's power plant. Nothing in the terms of claimant's employment precluded either party from terminating the relation without liability, and that is the controlling element. "The right to immediately discharge," said Mr. Justice Denison, speaking for the court, "gives complete control." *Industrial Com. v. Bonfils,* 78 Colo. 306, 241 Pac. 735. In further elucidation, the learned justice said: "By virtue of its power to discharge, the company could at any moment direct the minutest detail and method of the work. The fact, if a fact, that it did not do so is immaterial. It is the power of control, not the fact of control, that is the principal factor in distinguishing a servant from a contractor." We appreciate that in the particular service to which the company called claimant from his home to Denver, the company likely trusted him to determine the strategy of approach and presentation, but to say his employment in the matter was special rather than general, or that he was independent of control in the sense he was not the company's servant, would not be warranted. The claimant was not an independent contractor.

We deem it unnecessary to dwell at length on the contention that claimant was a casual employee and that his employment was not in the usual course of the company's business. What we have already said, and authorities now cited, justify our conclusion that the points are without merit. *Comerford v. Carr,* 86 Colo. 590, 284 Pac. 121; *Hoshiko v. Industrial Com.,* 83 Colo. 556, 266 Pac. 1114; *Lackey v. Industrial Com.,* 80 Colo. 112, 249 Pac. 662; *Employers' Mutual Ins. Co. v. Industrial Com.,* 74 Colo. 201, 219 Pac. 1078; *Sonnenberg v. Berg's Market* (Mo.), 55 S. W. (2d) 494.

The trial court's resolution has our approval. Let the order be that the judgment is affirmed.

Mr. Justice Bouck dissents.

Mr. Justice Bouck, dissenting.

The majority opinion seems to go beyond all bounds of logic and authority.

The Industrial Commission, in disallowing the claim of the alleged employee here, found on apparently sufficient evidence that, according to the true meaning of our Workmen's Compensation Act, he was not an employee, but an independent contractor, and that he was not injured by an accident arising out of or in the course of his employment. These findings of fact would, under former decisions of this court too numerous to mention, have been considered binding upon the courts. In spite of this, the district court substituted its own conclusions for those of the commission. This, I think, was error. I believe that this court, in sustaining the district court, likewise erred.

Charles J. Moynihan, the alleged employee, is an experienced attorney of over twenty years' general law practice, whose home and law office are both in Montrose, Colorado. He had represented the Oliver Power Company, of Paonia, Colorado, before the Public Utilities Commission in Denver. The hearing ended August 19, 1931, completing the current work for the company. The following day he left for home. The accident in this case happened at a point near Canon City, where Moynihan expected to spend the night. He was driving an automobile by private arrangement with one Clark, the owner of the car, who was with him in connection with some minor business. They had made the trip to Denver together, and together they were homeward bound, Clark being a resident of Ouray. The car left the road, Clark was killed, and Moynihan suffered serious injuries which form the basis of his claim. At the time of the accident. Moynihan was of course performing no duty connected causally in any way with his employment.

From the professional or any other standpoint, there was nothing peculiar about the arrangement between

Moynihan and the power company. He received a retainer which gave the client "the right to consult the office [Moynihan had two attorneys hired on salary] as to the going policies of the company in so far as they had to do with legality or legal propriety of some particular business venture or policy of the company." There was to be a per diem for extra work. Moynihan says "he was to be paid * * * the per diem for all work away from the office, all litigation or appearing before the Public Utilities Commission was to be paid for, conferences in the office pertaining to any of those matters which finally culminated either in lawsuits or trials in Delta County to obtain rights-of-way." He also testified: "It was finally agreed that I should be paid $50.00 a month until such time as the revenues of the company showed a profit, when we would make another adjustment."

No other case of claim for industrial compensation by an attorney in the general practice is cited by counsel or in the majority opinion. This fact is significant. The further facts that Moynihan, who according to his testimony was employed to supply all legal safeguards to the interests of the power company, did not advise the company to report him to the Industrial Commission as one of its employees, and that the company did not do so, imply a fair contemporaneous construction by Moynihan and the company of his real status as not falling within the terms of the Workmen's Compensation Act.

Hitherto it has seemed the unquestioned principle that certain professional men in the general practice are not within the act. One of these is not like the medical interne of a hospital, who, as Mr. Justice Cardozo (then of the New York Court of Appeals) expressed it in *Matter of Bernstein v. Beth Israel Hospital,* 236 N. Y. 268, 271, 140 N. E. 694, 695, is "a servant or employee by every test of *permanence of duty,* of *intimacy of contract,* and of *fullness of subjection.*" In the same case Judge Cardozo said: "A distinction is to be drawn * * * between

the position of a visiting or consulting physician, and that of an interne, who has placed his time and service at the call of a superior. We have drawn a like distinction between attorneys at law retained for a specific service, and *those serving a single employer in consideration of a salary* (Greenberg v. Remick & Co., 230 N. Y. 70, 75).'' And in *Matter of Renouf v. N. Y. C. R. R. Co.,* 254 N. Y. 349, 351, 173 N. E. 218, 219, where the compensation claim of a nurse was rejected, it is said that nurses ''are regarded as especially equipped to render professional services to patients when called on to do so *rather than as workmen.* They are grouped with doctors and lawyers * * *.''

However, even aside from the foregoing proposition, which places certain professional employment in a category outside the act, injuries suffered on the way to or from work are ordinarily not compensable. *Industrial Commission v. Anderson,* 69 Colo. 147, 169 Pac. 135. This court has held that only under special circumstances can an exception be made. *State Compensation Insurance Fund v. Industrial Commission,* 89 Colo. 426, 427, 3 P. (2d) 414; *Driscoll Construction Co. v. Industrial Commission,* 94 Colo. 568, 31 P. (2d) 491. In both these cases the employee was actively engaged in carrying out express instructions directly connected with his work. All the logic against liability in a case like the present, and particularly the reasoning which gave rise to the rule as to street risks, is in point here.

The foregoing has in part assumed, for the sake of the discussion, that Moynihan was an employee. I think, though, that the Industrial Commission's conclusion is correct and that he was merely an independent contractor.

It was the right and duty of the Industrial Commission to determine the facts by considering the evidence and drawing any reasonable inference therefrom. This the commission did when it refused to award compensation. Its conclusion should stand. I therefore dissent.