[File No. 6686.]

THE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, a Corporation, Respondent, v. STATE OF NORTH DAKOTA, P. B. Sullivan, R. H. Walker, and Adolph Michelson, as Members of the North Dakota Workmen's Compensation Bureau, Appellants.

(298 NW 773, 138 ALR 1115)

Opinion filed June 21, 1941.

*Alvin C. Strutz,* Attorney General, and *Lynn G. Grimson,* Assistant Attorney General, for appellants.

*Fuller & Powers,* for respondent.

Nuessle, J. This action was brought to recover money paid under protest to the Workmen's Compensation Bureau. This payment was made on demand of the Bureau for assessments computed by it upon the amount of commissions paid by plaintiff to certain of its agents during 1938. Defendants demurred to the complaint on the ground that it failed to state facts sufficient to constitute a cause of action. This appeal is from an order of the trial court overruling the demurrer.

The sole issue is as to whether the agents on account of whose compensation the assessments were made, were employees within the mean-

ing of that term as used in the Workmen's Compensation Act, article 11a of chapter 5, of the Political Code, being §§ 396a1–396a33, 1925 Supplement (chapter 162, Session Laws 1919), and acts amendatory thereof.

From the complaint it appears that plaintiff is a foreign corporation, licensed in the state of North Dakota to engage in the business of issuing and selling life insurance and annuity contracts. Plaintiff maintains a branch office at Fargo, North Dakota, in charge of its local manager. In this office records are kept covering the plaintiff's contracts outstanding in North Dakota and premiums are collected from policyholders within the state and remitted to the home office in New York. The manager is given authority to execute agency contracts with agents to be licensed by the state. Such agents are authorized to solicit applications for insurance and annuity contracts anywhere in North Dakota. These applications are submitted to the manager and by him transmitted to the plaintiff at its home office for acceptance or rejection. If accepted, contracts are issued to the applicants. The agents collect the initial premiums and receive commissions computed on the premiums thus paid. For and during the year beginning June 6, 1938, and ending June 6, 1939, plaintiff appointed soliciting agents, twenty-three in number, to procure applications for such contracts within the state. During the year the total of the commissions paid to these agents amounted to $2,589.64. These are the commissions on which the assessments here in question were computed. The largest amount paid to any one agent was $346.96; the smallest amount paid was $3.13. Three of the agents earned commissions of $300 or over; two between $200 and $300; six between $100 and $200; two between $50 and $100; two between $25 and $50; and eight less than $25 each. The relationship between the plaintiff and the soliciting agents is evidenced by a written contract. This contract, the same for all agents, fixes the rate of compensation by way of commission; provides that the terms of the contract shall be confidential, and that a violation of this confidence shall be cause for termination of the contract; forbids any rebates in premiums on penalty of dismissal of the agent; stipulates that the contract may be terminated by either party upon thirty days' notice and payment in full of any indebtedness due either party; pro-

·vides.that the agent shall represent no other life insurance company ·and shall devote his entire time to the interests of the plaintiff company; and, finally, paragraph fourteen of the contract stipulates that the company's book of Premium Rates and Rules, Regulations and ..Instructions, shall be loaned to the·agent who is "to be governed by the ·rules now in force or. amended .or adopted from time to time." This book recites that "these rules, regulations and instructions, are promulgated to meet in part the present requirements of the company's business and are furnished to each agent to supplement his appointment. They are subject to addition, revision, and modification at the company's discretion. Whatever they do not contain regarding the agent's work, the manager will promptly supply." Rule 1 contained therein, reads: "An agent is required to transact his business in accordance with the rules of the Company, or as he may be directed from time to time by the Company or its Managers." Rule 3 makes it the duty of an agent to solicit applications for insurance, to collect initial premiums, and to remit the money to the manager as soon as collected. The rules in all number more than two hundred. They are concerned with the duties of the agent, with the character of ·the risks that will be acceptable to the company, and generally outline the requirements of the company with respect to the business to be solicited.

The plaintiff further alleges in paragraph nine of its complaint, which we quote: ". . . that each of said agents has in fact adopted and at all times has followed his own individual method and means of transacting the business of soliciting agent with no actual supervision of his movements or of the details of his business on the part of plaintiff except as the plaintiff has approved or rejected applications procured and submitted by the agent to the plaintiff's manager, and except ·as said printed rules and regulations specifically direct the agent in the performance of the business of soliciting agent. That, at the time of the appointment of each of said agents, the parties so discussed and understood the contract, rules and regulations that, except for directions and instructions regarding the underwriting requirements of the plaintiff and the restrictions imposed on the business of life insurance by statute and official regulations of the various states, specifically set forth in the said contract, rules and regulations, it was mutually in-

tended that the responsibility and decision as to what if any insurance risks should be solicited by the agent, the time devoted to the business or to other occupations of the agent, and the methods, means, hours of work and place of solicitation, and the manner of transaction of the details of the agency business, would rest exclusively with the agent without right of control or interference on the part of plaintiff or its managers, and it was understood by the parties that Paragraph 14 of said contract and Rule 1 were intended to enable the plaintiff to keep the agent informed and directed in accordance with such rules and regulations as the Commissioner of Insurance and the legislature from time to time might impose on life insurance companies transacting business in the state."

Since the matter is now here on appeal from an order overruling a demurrer, the facts pleaded stand as admitted, the complaint must be liberally construed, and every reasonable intendment is to be made in its favor. McCurdy v. Hughes, 61 ND 235, 237 NW 748; Thompson v. Murphy, 61 ND 134, 237 NW 653; Cammack Piano Co. v. Western Surety Co. 56 ND 262, 216 NW 561; Weber v. Lewis, 19 ND 473, 126 NW 105, 34 LRA(NS) 364.

Pursuant to the terms of the Workmen's Compensation Act, § 2, chapter 286, Session Laws 1935:

" 'Hazardous employment' means any employment in which one or more employees are regularly employed in the same business or in or about the same establishment, except agriculture and domestic service, and except also any employment of a common carrier by steam railroad.

" 'Employee' means every person engaged in a hazardous employment under any appointment or contract of hire or apprenticeship express or implied, oral or written. . . .

" 'Employer' means . . . every person, partnership, association and private corporation . . . carrying on a hazardous employment."

The defendants contend that the agents appointed by the plaintiff in the manner and for the purpose set out in the complaint, were employees within the meaning of that term as above defined. The plaintiff, on the other hand, insists that under the contract of appointment as practically construed, they were not employees within the meaning of that term as used in the Compensation Act but were, in fact, independent contractors. If they were the latter, then the demurrer was

properly overruled. If they were employees, then the order from which the defendants appeal must be reversed. Thus it becomes necessary for us to determine on the facts pleaded in the complaint what the relationship was between the plaintiff and its agents.

Formerly, the question as to whether the relationship between one doing work for another and that other, was that of employee and employer, or that of independent contractor and employee, most frequently arose in actions where a recovery was being sought against the person for whom the work was being done on account of the negligence of the person doing it. And the cases of this kind are legion. "There is much confusion in the authorities as to what is and what is not an independent contract." Ruehl v. Lidgerwood Rural Teleph. Co. 23 ND 6, 135 NW 793, LRA1918C, 1063, Ann Cas 1914C, 680. But generally the final and determining test in such case may be said to be who has the right of control of the details of the work. If the person for whom the work is being done has the right of control, whether he exercise it or not, and is concerned not only with the result of the work but also with the manner and method of its doing, he is held to be an employer, and the person doing the work his employee. On the other hand, if he is concerned merely with the result of the work and has no control over the details of its doing, the person doing the work is held to be an independent contractor. It is true, of course, that in making this determination attention and consideration must be given to many elements. As, for instance, the nature of the work, where it is to be done, the terms of the contract under which it is done, whether the employment is for a stated period, or whether it is terminable at the will of the person for whom the work is being done, the manner of payment, and many other factors. But all of these things are to be considered chiefly for the purpose of determining whether in the final analysis the control of the details is in the person for whom the work is being done. Taute v. J. I. Case Threshing Mach. Co. 25 ND 102, 141 NW 134, 4 NCCA 365; Minneapolis Iron Store Co. v. Branum, 36 ND 355, 162 NW 543, LRA1917E, 298; Montain v. Fargo, 38 ND 432, 166 NW 416, LRA1918C, 600, Ann Cas 1918D, 826; Ignatowitch v. McLaughlin, 66 ND 132, 262 NW 352; La Bree v. Dakota Tractor & Equipment Co. 69 ND 561, 288 NW 476; Am. Law Inst.

Restatement, Agency, Vol. 1, § 220. See also Nichols v. Harvey Hubbell, Inc., 92 Conn 611, 103 A 835, 19 ALR 221, and note; Gall v. Detroit Journal Co. 191 Mich 405, 158 NW 36, 19 ALR 1164, and note; American Nat. Ins. Co. v. Denke, 128 Tex 229, 95 SW(2d) 370, 107 ALR 409, and note; Vert v. Metropolitan L. Ins. Co. 342 Mo 629, 117 SW(2d) 252, 116 ALR 1381, and note; Northwestern Mut. L. Ins. Co. v. Tone, 125 Conn 183, 4 A(2d) 640, 121 ALR 993, and note.

In Montain v. Fargo, 34 ND 432, 166 NW 416, LRA1918C, 600, Ann Cas 1918D, 826, supra, Chief Justice Bruce, writing the opinion of the court, drew the distinction between an independent contractor and an employee:

"According to § 6134, of the Compiled Laws of 1913, 'a servant is one who is employed to render personal service to his employer, otherwise than in pursuit of an independent calling, and who in such service remains entirely under the control and direction of the latter, who is called his master.'

"This definition of a servant, where it is sought to distinguish between a servant and an independent contractor, affords by inference a definition of an independent contractor, an independent contractor being considered a person employed to execute work, who is not within the definition of a servant."

And in Am. Law Inst. Restatement, Agency, Vol. 1, § 220 (c), it is said: "It is important to distinguish between a servant and an agent who is not a servant, since ordinarily a principal is not liable for the incidental acts of negligence in the performance of duties committed by an agent who is not a servant. . . . The important distinction is between service in which the actor's physical activities and his time are surrendered to the control of the master, and service under an agreement to accomplish results or to use care and skill in accomplishing results. Those rendering service but retaining control over the manner of doing it are not servants. They may be agents, agreeing only to use care and skill to accomplish a result and subject to the fiduciary duties of loyalty and obedience to the wishes of the principal; or they may be persons employed to accomplish or to use care to accomplish physical results, without fiduciary obligations, as where a contractor is paid to build a house. An agent who is not subject to control as to

the manner in which he performs the acts that constitute the execution of his agency is in a similar relation to the principal as to such conduct as one who agrees only to accomplish mere physical results. For the purpose of determining liability, they are both 'independent contractors.' . . ."

Since the enactment and application of the Workmen's Compensation Acts, and more latterly of the Social Security Acts, many cases involving the question as to the character of the relationship between an employer and those employed by him, have arisen under these acts. This has been so in North Dakota as well as in other jurisdictions, and the courts, in passing upon the question, have generally looked for guidance to the earlier negligence cases. In Kronick v. McLean County, 52 ND 852, 204 NW 839, where the determinative question was as to whether the plaintiff was an employee of the defendant county or the employee of an independent contractor, we said: "Under the Workmen's Compensation Act the relation of employer and employee must exist in order to make its provisions applicable. In § 2 thereof, 'employee' is defined as meaning 'every person engaged in a hazardous employment under any appointment, or contract of hire, or apprenticeship, express or implied, oral or written' and the liability sought to be enforced in this action is the liability of an *employer* who has failed to comply with §§ 6 and 7. The act declares such noncomplying *employers* to be 'liable to *their employees* for damages suffered by reason of injuries sustained in the course of employment.' Section 11. It prescribes no special or peculiar test for determining when the relationship shall be held to exist. Consequently, it must be determined as in other cases."

And we have followed the rule thus laid down in subsequent compensation cases where the question was as to whether the relationship involved was that of employer and employee, or employer and independent contractor. See, Lilly v. Haynes Co-op. Coal Min. Co. 50 ND 465, 196 NW 556; State ex rel. Woods v. Hughes Oil Co. 58 ND 581, 226 NW 586; Janneck v. Workmen's Comp. Bureau, 67 ND 303, 272 NW 188.

The business of life insurance in which the plaintiff is engaged is a business charged with a public interest, and accordingly the legisla-

ture may prescribe the rules and regulations with respect to that business designed to protect the public. Wanberg v. National Union F. Ins. Co. 46 ND 369, 179 NW 666. Manifestly, many of the rules laid down in the plaintiff's book of rules were designed for the guidance of the agents and the protection of the company in that there might be no violations of the regulations with which the company itself was required to comply. Thus the rule that an agent might not rebate on premiums. See, §§ 4854a2, 1925 Supplement, and 4855, 1913 Comp. Laws. Likewise the rule prohibiting agents from making statements or supplying figures relative to surrender values or other matters concerning the business, except such as were printed by the company or furnished by the manager, and the rule prohibiting the publishing of literature, circulars or advertisements without first obtaining the approval of the plaintiff. These were necessary to safeguard against violations of §§ 4854a4, 1925 Supplement, and 4853, 1913 Comp. Laws. And so with other of the rules. But it is to be noted that except in these and similar respects the agents were not restricted regarding the manner and method to be followed in doing the work they were appointed to do. With respect to the details of the work, there was no exercise of control on the part of the plaintiff. The plaintiff was concerned with the results of the efforts of the agents. What it desired was acceptable applications for its contracts. It was not concerned with the manner in which the agents attained those results so only that it was proper and lawful. The agents might solicit whom they would, by letter, or through personal interviews. They might work long hours, or short, or not at all. They might solicit anywhere within the state so long as they did not interfere with any other agent's operations. They might maintain places of business or not as they saw fit. They might go from place to place in the performance of their duties in any manner they desired—on foot, by automobile, by train, or otherwise. It is true they could not appoint subagents without the consent of the plaintiff, but they might employ clerks or stenographers to take care of their records or do their correspondence, or attend to other matters in connection with their business. They could not contract debts in the name of the plaintiff, but surely this was not a restriction of their freedom in soliciting applications. In short, the

plaintiff could not and did not exercise any control over the details of their work. We can reach no other conclusion in view of the allegations of the complaint, particularly those of paragraph nine thereof. So, measured by the rule adopted, the relationship between the plaintiff and its agents was that of employer and independent contractor.

The defendants cite and particularly rely upon the cases of Industrial Commission v. Northwestern Mutual L. Ins. Co. 103 Colo 550, 88 P(2d) 560, and Equitable L. Ins. Co. v. Industrial Commission, 105 Colo 144, 95 P(2d) 4. These cases tend somewhat to sustain the defendants' contention, though the controlling statutes there are much different from the statute now under consideration. In any event, we are not persuaded by their reasoning.

The order of the district court is affirmed.

BURR, Ch. J., and BURKE, MORRIS, and CHRISTIANSON, JJ., concur.