[File No. 6906]

INGA STARKENBERG, Appellant, v. NORTH DAKOTA WORK-MEN'S COMPENSATION BUREAU, Respondent.

(13 NW(2d) 395)

Opinion filed February 25, 1944.   Rehearing denied March 14, 1944

*Nilles, Oehlert & Nilles,* for appellant.

236

*Alvin C. Strutz,* Attorney General and *P. B. Garberg,* Assistant Attorney General, for respondent.

CHRISTIANSON, J.   This is an appeal from a judgment against a claimant in a proceeding under the Workmen's Compensation Act. (Laws 1919, chap 162, as amended).   The proceeding was instituted by Inga Starkenberg, the surviving widow, to recover compensation on account of the death of her husband, Felix Starkenberg.

Felix Starkenberg died on August 24, 1942 as a result of injuries which he had sustained on that day while constructing a portable granary for the Carpenter Lumber Company at Jamestown, North Dakota.   Inga Starkenberg presented a claim for compensation to the Workmen's Compensation Bureau.   The claim was rejected by the Bureau on the ground that Felix Starkenberg was not an employee of the Carpenter Lumber Company but was an independent carpenter.

Thereafter Inga Starkenberg duly appealed to the district court from the decision of the Bureau. The district court held that Starkenberg was working as an independent contractor, that he was not an employee, and that there was no liability on the part of the Bureau. Judgment was rendered accordingly, and Inga Starkenberg has appealed to this court, and demanded a trial anew.

The sole question presented for determination here is whether in constructing the portable granary Felix Starkenberg was working as an employee of the Carpenter Lumber Company, or was working as an independent contractor.

There is no conflict in the evidence. The facts established by the evidence are substantially as follows:

Felix Starkenberg was a carpenter residing in the city of Fargo, in this State. He decided to go to Fort Peck or Great Falls, Montana to look for work. He drove his car. On August 3, 1942, while on his way to Montana, his car broke down, and the car was towed into Jamestown.

At that time the Carpenter Lumber Company, which operated a lumber yard in Jamestown, was taking orders from farmers for portable granaries, and had contracted, and was contracting, with carpenters to build such granaries. The granaries were of different sizes. The company paid a certain sum for the construction of a complete granary, ranging from $15.00 for the smallest size to $55.00 for the largest size. There were no written "specifications or drawings," except for the first granary. There was a drawing for that. After that had been constructed, when a carpenter came and wanted to figure on the work, he was told to go out and look over the granary that had been built, and that others to be built would be like the one he viewed, but of the different sizes indicated to him, and he was told how much the company would pay for the construction of such granaries, which, as said, ranged in amount from $15.00 for the smallest size up to $55.00 for the largest size.

The lumber company furnished the building material, and the land on which the granaries were constructed. The lumber company had leased a tract of land across the street from its lumber yard for this purpose,—"several hundred feet along there," and the carpenter was told "to build it there. He picked the place where he wanted to build

it." The carpenters furnished the tools. A carpenter who had undertaken to construct a granary might do the work himself, or he might employ any assistants he desired to do the work. The lumber company had no control of or superintendence over the workers, or the manner of performance of the work. A carpenter who had undertaken to construct a granary might work such hours as he chose. He could begin work at such hour as he saw fit and stop when he saw fit. He could work all the time, or part time. The only understanding was that the carpenter who had undertaken to construct a granary "should have it finished in a reasonable time so that the farmer wouldn't be upset over not getting his building," but there was "no time limit." The company was interested only in the completed structure. Whenever a granary was finished, the manager or assistant manager of the company inspected the granary, and if it was accepted, the lumber company paid the carpenter with whom it had contracted the amount agreed upon for the finished structure. Two of the carpenters with whom the lumber company had contracted had other men working for them. These men were paid by the carpenters with whom the lumber company had contracted, and the manager of the lumber company testified that one of these carpenters carried Workmen's Compensation insurance on the men that worked with him in constructing the granaries, and that he thought the other one, also, carried such insurance.

Felix Starkenberg went to work and constructed four granaries, under the arrangement above stated. The granaries were accepted, and he was paid the amounts which it was stipulated he should be paid therefor. Starkenberg furnished his own tools, and according to the testimony of the assistant manager of the lumber company, Starkenberg had two men with him about a day and a half. He stated that they were transients who had come in on a train, and that he did not know what arrangement Starkenberg had made with them as to compensation; that the only thing he knew he saw them out there "up on the roof shingling with him (Starkenberg) and the next day or so they were gone." It is undisputed that under the arrangement between the lumber company and Starkenberg he had the right to engage such help as he desired, and that if he did it would be up to him to compensate such workers, and that the lumber company would have no control

over them,—they would be working for Starkenberg and not for the lumber company. Starkenberg was at work on the fifth granary when he was injured. He fell from the roof, and as a result of the injury he sustained he died about ten minutes thereafter.

The record shows that the lumber company had complied with the Workmen's Compensation Act, and that its employees in the lumber yard at Jamestown were covered; but the company had not listed any employees as carpenters.

Whether a person is an employee or an independent contractor is often a close, as well as a decisive, question in cases arising under Workmen's Compensation Laws; because generally an independent contractor is not within the scope of such laws, or entitled to compensation benefits. 1 Schneider, Workmen's Compensation 2d ed p 284; 71 CJ p 445; 28 RCL p 762. That is the rule in this state. "Under the Workmen's Compensation Act the relation of employer and employee must exist in order to make its provisions applicable." Kronick v. McLean County, 52 ND 852, 204 NW 839. One who is an independent contractor and not an employee is not within the scope of the act. Janneck v. Workmen's Comp. Bureau, 67 ND 303, 272 NW 188.

Hence, under the laws of this State, the question whether a claimant under the Workmen's Compensation Act, at the time of the injury was working as an employee, or as an independent contractor is one which affects the right to participate in the fund at all. Whether it is just, or whether it is sound public policy, to grant compensation to one who is injured while performing a certain work when he is working as an employee, and to deny him such compensation if he is injured while performing the same work as an independent contractor is a matter for the legislature, and not for the courts. The legislature has said that an employee shall be insured in the instances falling within the act, and that an independent contractor is not within the act. The courts have no power to amend the law.

The distinction between an employee and an independent contractor has long been recognized by the law. 28 RCL p 762. This distinction has been recognized, also, under the Workmen's Compensation Laws. 1 Schneider, Workmen's Compensation, 2d ed p 284; 71 CJ 445; 28 RCL p 762; Kronick v. McLean County and Janneck v. Work-

men's Comp. Bureau, both supra; Mutual L. Ins. Co. v. State, 71 ND 78, 298 NW 773, 138 ALR 1115.

While there is much confusion in the authorities as to the result reached in the application thereof, the courts generally if not unanimously have adopted the principle that "one who contracts with another to do a specific piece of work for him, and who executes the work entirely in accord with his own ideas, or with a plan previously given him by the person for whom the work is done, without being subject to the latter's orders in respect of the details of the work, with absolute control thereof is not a servant of his employer, but is an independent contractor. This is the common law definition, and it embodies the rule applicable under the statutes (Workmen's Compensation Laws), inasmuch as the acts do not attempt any definition. The test is to be found in the fact that the employer has or has not retained power of control or superintendence over the contractor or employee. An independent contractor, then, as defined above, is not entitled to be compensated under the statute." 28 RCL p 762. This principle has been adopted and prevails in this state. State ex rel. Woods v. Hughes Oil Co. 58 ND 581, 226 NW 586; Kronick v. Workmen's Comp. Bureau, 52 ND 852, 204 NW 839, supra; Janneck v. Workmen's Compensation Bureau, 67 ND 303, 272 NW 188, supra; Mutual L. Ins. Co. v. State, 71 ND 78, 298 NW 773, 138 ALR 1115, supra.

In Mutual L. Ins. Co. v. State, supra, it was said:—

"Generally the final and determining test in such case may be said to be who has the right of control of the details of the work. If the person for whom the work is being done has the right of control, whether he exercise it or not, and is concerned not only with the result of the work but also with the manner and method of its doing, he is held to be an employer, and the person doing the work his employee. On the other hand, if he is concerned merely with the result of the work and has no control over the details of its doing, the person doing the work is held to be an independent contractor." 71 ND at page 84, 298 NW at page 776.

Appellant's counsel contends that Starkenberg was an employee of the lumber company, and that the Bureau and the District Court were in error in finding that he was an independent contractor.

Counsel asserts :—

1. That it must be presumed that Starkenberg was working as an employee.

2. That the lumber company had the right to discharge Starkenberg, and, hence, exercised control over his work.

3. That the lumber company paid Starkenberg's surviving widow for the work he had performed on the unfinished granary on which he was working at the time he was injured, and that this shows that the lumber company considered him to be an employee, and not an independent contractor.

It is true that one who performs services for another, such as Starkenberg performed, "is presumed to be an employee unless the contrary is shown." Laws 1941, chap 305, § 1, p 574. The presumption is not evidence of a fact, but operates as a rule of law in absence of evidence. When evidence has been introduced as to the agreement under which the employment is performed, and the respective obligations of the parties thereunder, the presumption has spent its force and the evidence is controlling. "Presumptions are indulged to supply the place of facts; they are never allowed against ascertained and established facts. When these appear, presumptions disappear." Lincoln v. French, 105 US 614, 26 L ed 1189; Rousseau v. Brotherhood of American Yeoman, 186 Mich 101, 152 NW 939; Honrath v. New York L. Ins. Co. 65 SD 480, 275 NW 480, 112 ALR 1272.

In this case there was positive and explicit proof as to the relations between Starkenberg and the lumber company. There is no reason to doubt that such relations were as the evidence adduced showed them to be. There were other persons who constructed granaries for the lumber company at the same time that Starkenberg was working, and according to the testimony adduced in this case they were working under similar arrangements as Starkenberg. If the manager and assistant manager of the lumber company did not testify correctly as to such arrangement, it would have been a simple matter to so show by some of the other carpenters who constructed granaries at the time.

The contention that the lumber company had the right "to discharge Starkenberg" is, we think, without support in the evidence.

The contention is predicated upon certain answers by the manager

and assistant manager of the lumber company to questions propounded to them on cross-examination.

The manager testified that he did not have much to do personally with making arrangements with the men who built the granaries; that this was done by the assistant manager; that "each time that Starkenberg started to build a bin, he was told what size to build."

The manager further testified on such cross-examination:—

"Q. Now, Mr. Olson, as you stated, you didn't agree to the building of any number of bins when you started?

A. No.

Q. So, of necessity Starkenberg had a right to quit at any time he wanted to?

A. Yes, that is right.

Q. You had a right to tell him to quit at any time you wanted to?

A. If we didn't have any more work."

On re-direct examination he stated that when he said "he could quit at any time we didn't have any more work", that "would contemplate when the job was finished", that is, when he had constructed the granary or granaries which he had agreed to construct.

In his testimony given on direct examination he had testified that they exercised no supervision or control over Starkenberg (or the other carpenters who constructed granaries); that "the only thing we asked is that he build a good building, and when the building is finished, we inspect it to see that it is a good building"; that "they get paid for the job as soon as it is finished and approved"; that they had "no money until they finished"; that Starkenberg finished his first job in about four days, and then was paid for that.

The assistant manager testified on such cross-examination:—

"Q. Of course, when he started to build, you went over there to see if he could do the work?

A. Not so much during construction, not until after the completed job.

.    .    .    .    .    .

Q. If this fellow had not been able to do carpenter work, you would have told him to stop, and you felt you had a right to do that? In other words, he had to do the work of a carpenter?

A. That is right.

Q. Of course, after he built the first one you didn't pay so much attention to the rest because then you knew he could do the work.

A. That is right."

In his testimony theretofore given on direct examination he had testified:

"Q. Did you exercise any supervision over Mr. Starkenberg's work?

A. No.

Q. As I understand it, your only interest was in the completed building?

A. That is right."

He testifed, also, that he exercised no supervision over Starkenberg; that he was interested only in the completed building; that he inspected each building upon its completion, and that Starkenberg was paid the full amount upon approval of the building.

The testimony of the manager and assistant manager fails to show that the lumber company had the right to control the performance of the work, or that it had any right to terminate the contract, after Starkenberg had begun the construction of a granary. The fact that payment for the construction of each granary was made dependent upon inspection and approval did not constitute any such control as tended to show that Starkenberg was an employee. Such provision is frequently if not generally to be found in building contracts. 9 Am Jur p 22 et seq.

The evidence shows that the lumber company paid Mrs. Starkenberg the difference between the contract price and what it had to pay out to finish the building that Starkenberg was constructing at the time he was injured. We are unable to see how this had any tendency to prove that Starkenberg was an employee. The job was incomplete. The contractor died before the job was completed. The lumber company received the benefit of the work that had been performed. Leaving all question as to legal obligations wholly on one side, there certainly was a moral obligation on the part of the lumber company to pay for what it received. This the company proceeded to do. It did not wait for the appointment of a legal representative. It paid the surviving widow. As the trial judge aptly remarked in his memorandum

decision:—"No honorable person or firm should under the circumstances do less."

The Workmen's Compensation Bureau and the District Court were correct in holding that Starkenberg was an independent contractor, and not an employee of the lumber company.

Judgment affirmed.

Morris, Ch. J., and Burke, Nuessle, and Burr, JJ., concur.