[File No. 7047]

OTTO C. BERNARDY, Appellant, v. A. P. BEALS, doing business under the firm name and style of Western Service Company, Respondent.

(28 NW2d 374)

Opinion filed July 1, 1947

*Nels G. Johnson,* Attorney General, *P. B. Garberg,* Assistant Attorney General, and *Harry Lashkowitz,* for appellant.

*Burnett, Bergesen, Haakenstad & Conmy,* for respondent.

Morris, J. This is an appeal from a judgment of the district court reversing a decision of the Workmen's Compensation Bureau whereby the Bureau made an award in favor of Otto C. Bernardy as an injured employee, against A. P. Beals, an uninsured employer, pursuant to the provisions of Ch 65–09, Rev Code ND 1943.

As a basis for the reversal of the decision of the Bureau, the district court found that the Bureau's determination that the claimant was an employee of Beals was contrary to the evidence and the law applicable thereto, and that the findings of fact of the Bureau are not supported by the evidence and that the conclusions and decisions of the Bureau are not supported by the findings of fact. The court directed merited criticism at the Bureau for lack of compliance with the provisions of the Administrative Agencies Practice Act (Ch 28–32, Rev Code ND 1943) in its failure to "make and state concisely and explicitly its findings of fact and its separate conclusions of law, and the decision of the agency based upon such findings and conclusions" as required by the Act. However, the Bureau made brief findings of ultimate fact essential to its decision but made no separate conclusions of law. A transcript of the testimony and the files are before us and are sufficient to show the facts upon which

the Bureau made its decision. The procedural defects although censurable are not jurisdictional. Goodacre v. Panagopoulos, 72 App DC 25, 110 F2d 716; Hurwitz v. Hurwitz, 78 App DC 66, 136 F2d 796, 148 ALR 226. The case is here for trial de novo. Our regard for the expedition of justice prompts us to go directly to the merits.

The findings of fact upon which the Bureau based its decision show that the claimant was injured on January 2, 1945; that the injury sustained was an amputation of the first finger of the right hand and a laceration of the inner aspect of the second finger; that at the time of the injury the employer of the claimant, A. P. Beals, had contributed nothing to the Workmen's Compensation Fund for insurance for employees covering the period in which the claimant was injured; that the employer was engaged in a hazardous occupation as defined by law on the date the injury occurred and was liable for personal injuries sustained by employees in the course of employment; that the claimant's injury was sustained in the course of employment and was not purposely self-inflicted nor caused by plaintiff's willful intention to injure another or his voluntary intoxication. The findings further show the extent of disability and the time for which it endured, loss of wages and medical expenses incurred. On the basis of these facts, the Bureau made an award of $1479.82 in favor of the claimant and against the employer.

The evidence shows that the claimant was injured while cutting meat with a power saw in the employer's storage locker establishment. He claims he was an employee of Beals. Beals claims that he was an independent contractor. There was no written contract between the parties. Each testifies in support of his own view of the relationship. The evidence is highly conflicting. The Bureau held a hearing and a rehearing of the matter. Each of the Commissioners filed a memorandum opinion giving his individual views at some length. Two of them reached the conclusion that the claimant was an employee, while the other Commissioner held that he was an independent contractor. This one issue of the status of the claimant is determinative of the correctness of the Bureau's decision.

Whether a worker is an employee or an independent contractor is sometimes difficult to determine. Certain tests have been developed by this and other courts to aid in the determination. One of the most important tests to be applied is the right of employer to control not merely the result but the manner in which the work is done and the methods used in its performance. Starkenberg v. North Dakota Workmen's Comp. Bureau, 73 ND 234, 13 NW2d 395; Janneck v. Workmen's Comp. Bureau, 67 ND 303, 272 NW 188; State ex rel. Woods v. Hughes Oil Co. 58 ND 581, 226 NW 586; Lilly v. Haynes Co-op. Coal Min. Co. 50 ND 465, 196 NW 556; Kronick v. McLean County, 52 ND 852, 204 NW 839.

An important factor in determining the right of control is the power of the employer to terminate the employment at any time without liability. L. B. Price Mercantile Co. v. Industrial Commission, 43 Ariz 257, 30 P2d 491; Re Black, 58 Idaho 803, 80 P2d 24; Fox Park Timber Co. v. Baker, 53 Wyo 467, 84 P2d 736, 120 ALR 1020. In Press Pub. Co. v. Industrial Acci. Commission, 190 Cal 114, 210 P 820, the Supreme Court of California said: "Perhaps no single circumstance is more conclusive to show the relationship of an employee than the right of the employer to end the service whenever he sees fit to do so."

Factors that may also be considered in determining whether the relationship is one of employee or independent contractor is the furnishing of tools, the control of the premises where the work is done and the mode of payment. Lemkuhl v. Clark, 209 Minn 276, 296 NW 28; Bergstrom v. Brehmer, 214 Minn 326, 8 NW2d 328. It would seem that courts are inclined to give somewhat less weight to the mode of payment than to some other factors. In Burchett v. Department of Labor & Industries, 146 Wash 85, 261 P 802, 263 P 746, the court quotes the following from 12 RCL 74, 75: "The fact that a person is paid by the piece or by the job, though indicating that he is an independent contractor, is not conclusive on the question, and he may nevertheless be held to be a servant. Particularly is this so when there is no definite amount of work to be done, and either party is at liberty to terminate the employment whenever he wishes,

and the employee receives pay for just the amount of work done." See also Re Black, 58 Idaho 803, 80 P2d 24, supra. Lillibridge v. Industrial Acci. Commission, 4 Cal App2d 237, 40 P2d 856; Lawson v. Sigfrid, 83 Colo 116, 262 P 1018; Riggins v. Lincoln Tent & Awning Co. 143 Neb 893, 11 NW2d 810; note in 38 ALR 839.

The question of whether the claimant was an employee or an independent contractor cannot be decided by the summary application of a general rule. Only a studied consideration of all the facts and circumstances enables us to reach a definite conclusion. We get little assistance from the few ultimate facts that were found by the Bureau or from the conclusions of the trial court that the findings of the Bureau are not sustained by the evidence. The claimant testified that he was working for the Northern Pacific Railroad on a shift that lasted from 3:30 P.M. to 12:30 A.M. and, therefore, had his mornings free. Beals wanted somebody to cut up meat at his plant and to pick and clean birds. Beals offered to pay the claimant 50% of the charges that were made to customers for the services rendered. The charge made for cutting meat was $2\frac{1}{2}$ cents a pound and one-half of that amount, or $1\frac{1}{4}$ cents, was the amount that the claimant was to receive. The amount for cleaning, picking and sometimes wrapping the birds ranged from 20 to 35 cents each. One-half of that amount was the measure of the claimant's pay. When the work was performed the claimant made out a slip showing the amount of the total charge and the one-half that was coming to the claimant and turned the slip into the office. There was no definite pay day. Beals was out of town frequently, selling refrigerating plants and parts and it seems that the claimant was paid when he came back to the plant at irregular intervals, usually of about ten days. The claimant did not have definite hours of work. He usually arrived at the plant between 9 and 9:30 in the morning. The amount of time he spent depended upon the work to be done. He usually worked until 2:30 with a short period off for lunch. Sometimes he secured someone else to take his place on the railroad job and worked evenings. Sometimes he worked on Sunday. Aside

from the work for which he was paid on a piece basis the claimant also received pay at 70 cents per hour for preparing birds for shipment and for cleaning up the cutting room and other work. The slips that he turned into the office showed the number of hours spent in that work, which accounted for a comparatively small portion of the total compensation that he received.

Beals testified that the claimant's work was primarily that of processing in connection with meat and fowl placed in the locker plant. It consisted of weighing, wrapping and cutting meat and dressing fowl and putting the products away in lockers. It was the duty of the claimant to take care of all such processing and he was to hire such additional help as might be needed. To substantiate his version of the agreement Beals points out that the claimant hired his mother-in-law to help prepare fowl when that type of work became heavy and that Beals made out but one check to the claimant who settled with her for the services she had rendered. It also appears that in November, 1944, one Ollie Albrecht, who had his own sausage making business in the same building, received a check for $14.83 for helping with the processing work. This check was made out to the claimant and by him endorsed to Albrecht. It does not appear whether Albrecht turned in his own slips. The amounts charged for his work are not shown on the slips turned in by the claimant. Both Beals and the claimant deny hiring Albrecht. Albrecht testified that he didn't know who was paying for his work. He said that considerable work had accumulated and that a girl who worked in the office as Beals' secretary asked him to help. He also was asked to help by the claimant.

The claimant's version of the employment of his mother-in-law was that when a Mr. Chester Lawson (whose employment is totally unexplained) quit, the claimant told Beals that he couldn't clean all the birds and that Beals should get some more help. That was the time that Albrecht did the work heretofore mentioned. Beals told the claimant that he couldn't get any help. The claimant told him that his mother-in-law would probably come down. He quotes Beals as saying, " 'It is all right with me if she works but I wish you would run your checks together

so I don't have to keep track of too many different sets or different lists of work.'" Beals flatly denies this statement.

It also appears that on one occasion the janitor did some work in connection with the processing. This is shown by a notation on one of the slips turned in by the claimant "Bill Casper time $3.50." This amount was deducted from the amount paid to the claimant and payment was made direct to Casper who had turned in his own slip. The claimant testified that he did not hire Casper and that Casper was at work when the claimant reached the plant at 9 o'clock one morning and that he did not keep track of the number of birds that Casper cleaned. Casper did not testify and there is no other explanation of his employment.

The testimony of the parties regarding the terms of employment is irreconcilable. We, therefore, pass to other facts and circumstances in order to determine the true relationship of the parties. There is little direct testimony bearing upon the right of control other than the testimony of Beals which we have noted above. Neither is there evidence of the exercise of control. On the other hand, it appears that there was no definite period of employment and that as pointed out in the memoranda of the majority Commissioners the employment could have been terminated by Beals at any time he saw fit. It would also seem that the claimant could have quit at any time without incurring liability for breach of contract. According to the claimant's uncontradicted testimony, ". . . after about in September when it was going pretty good and I was getting paid for the time I did sit around there, why, then he wanted to cut me down to a weekly wage and I told him to go ahead and get somebody else, that I was satisfied at getting paid at the half or the same way we had been." Thus it seems that both parties were then under the impression that Beals had the right to terminate or change the original agreement at will. This points strongly to the employer's right of control and it is the right rather than the actual exercise of it that furnishes the criterion. State ex rel. Woods v. Hughes Oil Co. 58 ND 581, 226 NW 586, supra; Standish v. Larsen-Merryweather Co. 124 Neb 197, 245 NW 606;

Press Pub. Co. v. Industrial Acci. Commission, 190 Cal 114, 210 P 820, supra; Burruss v. B. M. C. Logging Co. 38 NM 254, 31 P2d 263; Janofski v. Federal Land Bank, 302 Mich 124, 4 NW2d 492.

We are satisfied that in this case the right of control of the claimant not only as to the result but as to the details of the work rested in Beals and that he could have terminated the employment at any time that the work of the claimant was not satisfactory to him. The compensation was largely on a piece time basis although a portion of it was determined at the rate of 70 cents per hour. The work was an integral part of the operation of the business. Beals had complete control of the premises upon which the work was done and furnished all of the tools and equipment. While there is dispute as to whether or not the claimant was required to be present at the plant between certain hours there can be no doubt that he was required to be there when there was processing to be done. The same quantity of produce was not available for processing each day, which accounts for irregular hours. The services were performed for customers who were charged by Beals on a piece basis and it was reasonable that he should employ his processor on the same basis. The customers were undoubtedly patrons of Beals' business establishment rather than customers of the claimant. All these factors point to an employment rather than an independent contract. Rutherford Food Corp. v. McComb, 331 US 722, 91 L ed 1772, 67 S Ct 1473; Green Valley Co-op. Dairy Co. v. Industrial Commission, 250 Wis 502, 27 NW2d 454.

Beals' urges as one of the circumstances sustaining his contention, that the claimant had another regular job with the Railroad Company and that at times he did some work for Albrecht, the sausage maker, who paid the claimant in sausages. We see no inconsistency between these facts and plaintiff's status as an employee. Riggins v. Lincoln Tent & Awning Co. 143 Neb 893, 11 NW2d 810, supra.

It further appears that on January 2, 1945, the date of claimant's injury, Beals, who had theretofore secured no coverage for

any of his employees under the Workmen's Compensation Fund, filled out and caused to be forwarded to the Bureau an application for coverage on five employees, one of which was a meat processor.

After carefully reviewing the entire record we agree with the majority of the Commission that the claimant Bernardy was an employee of Beals and that he is entitled to that protection which the Workmen's Compensation Law of this State affords. The judgment of the district court is, therefore, reversed.

CHRISTIANSON, Ch. J., and BURKE, NUESSLE and BURR, JJ., concur.