**Mrs. Frieda BROWN, Claimant and Appellant,**

v.

**NORTH DAKOTA WORKMEN'S COMPENSATION BUREAU, and Wheeler Lumber Bridge & Supply Company, a corporation, Respondents.**

**No. 8407.**

Supreme Court of North Dakota.

Sept. 20, 1967.

de novo must review the whole record as in any case tried to the court without a jury. Gullickson v. North Dakota Workmen's Compensation Bureau, 83 N.W.2d 826 (N.D.1957), Syllabus 3.

It is our view that the facts in this case, when viewed in the light of our workmen's compensation statutes, require the conclusion that Mr. Brown was an employee of the company at the time of his death, and thus that his widow is entitled to the payment of benefits from the North Dakota Workmen's Compensation Fund.

Sperry & Schnell, Bismarck, for appellant.

Dale W. Moench, Asst. Atty. Gen., Bismarck, for respondent Workmen's Compensation Bureau.

Pearce, Engebretson, Anderson & Schmidt, Bismarck, for respondent Wheeler Lumber Bridge & Supply Co.

ERICKSTAD, Judge.

The decisive issue in this case is whether the decedent, Walter C. Brown, was an employee of Wheeler Lumber Bridge & Supply Company, a corporation, within the meaning of the North Dakota workmen's compensation statute at the time of the injuries which caused his death.

The case arises from a claim filed by Mr. Brown's widow Frieda Brown with the North Dakota Workmen's Compensation Bureau for the payment of benefits from the North Dakota Workmen's Compensation Fund for compensation on account of Mr. Brown's death. Trial de novo has been demanded in this court.

■ It was settled by this court in a decision rendered in 1957 that upon an appeal from a judgment of the district court rendered in an appeal from a decision of the Workmen's Compensation Bureau, the Supreme Court on a demand for a trial

■ The legislature, in establishing the Workmen's Compensation Bureau and the fund from which the benefits are paid, asserted that the prosperity of this state depends in a large measure upon the well-being of its wageworkers; and to secure this prosperity it provided sure and certain relief for workmen injured in hazardous employment and for their families and dependents. § 65-01-01, N.D.C.C.

■ As a corollary to the policy set forth in that section, this court has said that the workmen's compensation act must be liberally construed to promote the ends intended to be secured by its enactment. Erickson v. North Dakota Workmen's Compensation Bureau, 123 N.W.2d 292, 294 (N.D.1963).

The term *hazardous employment* is defined as "any employment in which one or more employees are employed regularly in the same business or in or about the establishment," with certain named exceptions which are not pertinent to this appeal. § 65-01-02(4) (a), N.D.C.C.

The term *employee* is defined as "every person engaged in a hazardous employment under any appointment, contract of hire, or apprenticeship, express or implied, oral or written," with certain inclusions and exceptions not pertinent to this appeal. § 65-01-02(5), N.D.C.C.

■ The definition of *wages* is as follows: "'Wages' shall include the market

value of board, lodging, fuel, and other advantages which can be estimated in money which the employee receives from the employer as a part of his remuneration." § 65–01–02(12), N.D.C.C. Although not specifically mentioned in this definition, *wages* must have been intended to include monetary remuneration for services rendered on an hourly basis, such as that by which Mr. Brown was paid for his services in the yard and while driving the company's tractors. There being no exclusion, it is reasonable to assume that the definition also includes monetary remuneration for services rendered on other than an hourly basis, such as that by which Mr. Brown was paid 27½ cents per mile for the use of his tractor and for his services while making deliveries of the company's products for the company.

The foregoing statutes must be read in light of § 65–01–03, which reads as follows:

65–01–03. Person performing service for remuneration presumed an employee. —Each person who performs services for another for a remuneration, whether the same is paid as a salary, commission, or other considerations in lieu thereof, under any agreement or contract of hire, express or implied, shall be presumed to be an employee of the person for whom the services are performed, unless he shall maintain a separate business establishment or shall hold himself out to or shall render services to the general public.

North Dakota Century Code.

As we view the evidence, Mr. Brown was employed by the company, a lumber and bridge supply wholesaler, sometime in July 1965, following the injury and consequent disability of one of its employees. As no written contract of employment was entered into between Mr. Brown and the company, and as the lease agreements that were entered into between the parties providing for the rental of Mr. Brown's Mack tractor were apparently merely a means on the part of both parties to avoid the rules and regulations of the Interstate Commerce Commission and the North Dakota Public Service Commission, we must determine whether Mr. Brown was an employee, within the meaning of the workmen's compensation statutes, without the aid of a written agreement. The lease dated May 31, 1965, was completely ignored, as evidenced by the fact that payments were made, not on the basis called for in the lease of $20 per day rental, but on the basis of 27½ cents per mile traveled in delivering the company's products and returning to its yard. Under those circumstances, although Mr. Brown received no payments in connection with the use of his tractor after October 12, the date of the second lease, it is reasonable to assume (the leases being identical except for dates) that the later lease was also ignored.

It is conceded by the company that from sometime in July 1965 until his death Mr. Brown was an employee compensated at an hourly rate for the work that he did in the company's yard, which included unloading railroad carloads of the company's products and loading of three trailers which the company owned, and for his services in making delivery of the company's products with the two tractors which the company owned. The company kept a daily record of Mr. Brown's hours in this employment and made deductions for social security and federal income taxes from his earnings therefrom. It kept no records of the hours he spent when using his tractor to pull its trailer, carrying its products to its customers. It paid for that service on a 27½ cent-per-mile basis. He worked on an hourly basis unless the company had a load for him to haul with his tractor.

The company contends that at the time of his death, which occurred at about 9:00 a. m., October 14, 1965, he was engaged as an independent contractor and not as an employee of the company. Death resulted

from injuries which Mr. Brown received when the tractor he was driving, which he owned, collided with a westbound freight train at the Northern Pacific Railway crossing not far from the company's yard on the east edge of Bismarck, as he returned from delivering a trailerload of the company's products to one of its customers at Stanton, using the company's trailer.

■ It is the company's contention that the mode of payment for the trips made by Mr. Brown while using his tractor and the company's trailer before the date of the accident clearly indicates that Mr. Brown at the time of his death was acting as an independent contractor rather than as an employee of the company. In rejecting this contention we note that what Mr. Brown was doing at the time of his death, namely, transporting the company's products to its customers, was an integral part of the company's business, and that he had rendered to the company substantial similar service on a recurring basis.

■ In so doing we are in accord with the modern tendency of the courts to find employment when the work being done is an integral part of the regular business of the employer and when the worker, relative to the employer, does not furnish an independent business or professional service. See 1A Larson, Workmen's Compensation Law § 45.00 (1966).

We are thus applying what *Larson* calls the *relative-nature-of-the-work test*, which includes a consideration of the extent to which the claimant (in this case, the claimant's decedent) offered an independent public service. See *Larson* § 45.10. For a discussion of the *relative-nature-of-the-work test* and an application of it to a case similar to this case in many respects, see Boyd v. Crosby Lumber & Manufacturing Co., 250 Miss. 433, 166 So.2d 106.

See also: Brown v. E. L. Bruce Co., 253 Miss. 1, 175 So.2d 151.

■ Lest it be argued that if we were to apply the *right-to-control test*, previously applied by this court in Starkenberg v. North Dakota Workmen's Compensation Bureau, 73 N.D. 234, 13 N.W.2d 395, and in other cases, our conclusion would be to the contrary, we believe that the evidence in this case supports the view that the company reserved the right of control, although it may not have exercised that right completely. It is clear from the evidence that the company had the authority to terminate Mr. Brown's hourly employment at any time, and although the local manager of the company testified to the effect that the company would not have had the authority to terminate Mr. Brown's haul once he was en route, we believe that is immaterial, for had the company determined to end his employment as an hourly laborer, it could also have determined not to supply him with any future delivery orders, and this, for all practical purposes, would have terminated his hauling. The use of his tractor to pull the company's trailer in delivering the company's products to its customers depended daily upon the needs of the company, and unless those needs required the use of his tractor, he worked each day at an hourly wage on the same basis as did the employee whom he replaced, who supplied no tractor and worked only at an hourly wage.

It is interesting to note that there is no evidence that the company exercised any more control over Mr. Brown when he drove the company's tractor, pulling the company's trailer and load, than when he drove his own tractor, pulling the company's trailer and load, to the company's customers.

Because the company has asserted that the mode of payment, the fact that Mr. Brown furnished the tractor, the fact that no deductions were made for social security or income taxes from the income he earned while driving his tractor, and the fact that Mr. Brown paid for the gas, oil, and insurance on his own tractor require the con-

clusion that Mr. Brown was an independent contractor rather than an employee, we believe that the 1949 decision of the Supreme Court of South Dakota in James v. McDonald, 73 S.D. 78, 39 N.W.2d 478, is pertinent.

In that case James furnished the tractor, received a share of the proceeds of each haul, and paid for all the upkeep on the tractor, including gasoline, oil, and license fees. No deductions were made for social security tax or income tax. Under those circumstances, although the South Dakota court apparently follows a different rule than does our Court on a review of an administrative proceeding, it found that the evidence was such that the ultimate fact of employment as found by the Industrial Commissioner must be accepted.

The South Dakota court talked about the *right-to-control test,* but it seemed to be applying the *relative-nature-of-the-work-test,* in that it emphasized that each trip, whether made by James or by the owner McDonald or by another employee, was made as a part of the trucking business owned and operated by McDonald. In other words, the court found that the trips made by James were an integral part of McDonald's trucking business; and, as we have stated previously, that was the situation in the instant case, in that the trips made by Mr. Brown after his employment by the company were made for the company and constituted an integral part of its business.

▆▆ In this case there is evidence that before Mr. Brown was employed at an hourly rate by the company, he had done some hauling for the company with his tractor, and that he had hauled also for other corporations; and there is some very scanty evidence that he may have employed a driver, at which time he may have used his tractor to haul for the company and possibly for others even after his employment by the company. The hauling for others than the company or for the

company with another driver, if any, after his employment by the company was relatively meager, and we therefore discount it in any determination of the issue in this case. The hauling before his employment by the company was under such different circumstances that it has no bearing on the determination of the issue here.

▆▆ On October 14, 1965, the date of Mr. Brown's injuries and death, the company's sign was affixed to each side of the cab of his tractor, covering his name. Even after the collision with the train, the company's sign still covered Mr. Brown's name on one side of the tractor. The fact that the company's signs covered Mr. Brown's name on the cab of his tractor indicates that Mr. Brown was not holding himself out to the public or the company as an independent contractor while transporting the company's products.

We also note what the South Dakota court said in *James* about the failure on the part of McDonald to instruct James as to what route he should take, how fast he should drive, and the other details of the trip:

> * * * The evidence fairly discloses that McDonald assumed control of the whole situation. McDonald was the boss, he owned the business, directed which trips James should make, collected the money and paid James. True, he did not in any instance instruct James as to which route to take, how fast to drive or as to other details in making a trip, but we believe the commissioner could infer that he had the right so to do from his affirmative answer to the question, "If he was going to use your equipment he was going to use it the way you told him to do it?"

James v. McDonald, 73 S.D. 78, 39 N.W. 2d 478, 481.

It is true that in James there was testimony that McDonald acknowledged that

James, if he was to use McDonald's equipment would have to use it as McDonald told him to use it, which statement is absent from this case. However, we believe it naturally follows that when Brown used the company's trailer to deliver the company's products, the company had the right to require him to follow its directions for the protection of the trailer and its load, had it determined the necessity for giving such directions, notwithstanding that the company's local manager in effect denied that the company had this authority.

We believe it is significant that Mr. Brown was not paid at the end of each trip that he made with his own tractor but was paid monthly for the trips that he made during the previous month.

That quarrymen were not paid at the completion of a job but were paid bimonthly for tonnage actually produced by them in that period was considered by the Arizona Supreme Court, in a decision rendered in 1947, to suggest that the men were employees. Industrial Commission v. Meddock, 65 Ariz. 324, 180 P.2d 580.

In that case a written contract existed, in which it was agreed that "[the quarry operator] shall exercise no supervision or control over [the quarrymen] or the manner or means by which the mining work is carried on and is interested only in the products of said quarries delivered to him on the ground aforesaid." Notwithstanding that clause in the contract, the court found the quarrymen to be employees and stressed, as another important feature, that neither the written contract nor the conditions under which the quarrymen worked contemplated a definite end of their job. The Arizona court apparently believed that the fact that there was no provision for an end of the quarrymen's job indicated that they were employees, not independent contractors.

It should be noted that the oral contract under which Mr. Brown worked apparently contained no specific provision for termination.

The trial court's judgment is therefore reversed, and the case is remanded with instructions to the trial court to enter an order for judgment directing the Workmen's Compensation Bureau to award to Mrs. Brown, as the widow of an employee who died from injuries suffered in the course of his employment, the benefits she is entitled to under the workmen's compensation statutes, consistent with the views expressed in this opinion.

STRUTZ, C. J. and PAULSON, J., concur.

KNUDSON, J., deeming himself disqualified, did not participate; Honorable EMIL A. GIESE, Judge of the Sixth Judicial District, sitting in his stead.

TEIGEN, Judge (concurring specially).

I concur in the result reached by the majority but I do not agree that it is proper for this court to establish the rule set forth in Syllabus 5 of the majority opinion. This syllabus, which now becomes law, establishes an entirely new test to determine coverage in workmen's compensation cases and wipes out a firmly established precedent. The majority, by judicial decree, legislate coverage to many who were not heretofore covered by the Act. The test adopted in Syllabus 5 is much broader in scope than previous tests used in this State and will include under workmen's compensation coverage a large segment of services heretofore excluded under the law as interpreted without any change in the statutes. It is a policy change without the benefit of legislative action.

I do not feel it is the function of this court to effect a policy change but this is a function left exclusively to the discretion of the legislature.

It appears to me that Syllabus 5 extends coverage to a large number of persons who were not heretofore classified as employees. Some examples of expanded coverages may be as follows: An architect who, on a recurring basis, calls on heating engineers, lighting engineers or structural engineers to assist him by supplying technical engineering data for the preparation of plans and specifications for buildings may be required to carry workmen's compensation coverage on the engineers, even though they are an independent professional business; a retail business that calls on the layout man from an advertising agency or newspaper on a recurring basis to assist in setting up its weekly advertising may be required to carry coverage on the advertising agency's layout man; or a wholesaler which has a fleet of trucks which it has serviced and repaired by a garage on a recurring basis must carry coverage on the workmen of the garage that do the work. It may include an office, employing machine operators and typists, which had contracted with a repair agency to keep its office machines in repair. Perhaps it may include a church contracting with a janitorial service to clean its church building once each week. It may even extend coverage as in Colorado in Industrial Commission v. Moynihan, 94 Colo. 438, 32 P.2d 802, where a lawyer who maintained a general law practice and received a retainer from a utility company, which gave the utility the right to his services on legal matters, was injured while enroute to a hearing before the Public Service Commission to plead for a certificate of public convenience and necessity for the utility. It may also reverse Mutual Life Insurance Company of New York v. State, 71 N.D. 78, 298 N.W. 773, 138 A.L.R. 1115, which holds that insurance agents soliciting to sell life insurance in North Dakota on a commission basis, under agency contracts, are independent contractors. However, I agree with the result reached by the majority in the application of the "right to control test."

The question here is: When is an employee not an employee under the workmen's compensation laws?

Brown was a regular company employee working at the company yard and hauling the company's products, using the company's truck tractor to pull the company's trailer carrying the company's product to the company's customer for which he was paid an hourly wage. By arrangement, however, because Brown also owned a truck tractor, it was agreed that on occasion Brown could use his own truck tractor to pull the company's trailer carrying the company's product to the company's customers, in which event he would be paid at the rate of 27½¢ per mile. During the time of employment, Brown was a full-time employee of the company. He did not hold himself out as an independent carrier or a carrier for hire to others. In fact, his truck was not licensed for that purpose. It seems apparent that the lease of the truck to the company was entered into to circumvent the law governing motor carriers. However, the lease on its face appears legal and I know of no reason why the lease arrangement could not have been carried out. The arrangement which the company now maintains it orally entered into with Brown makes him an unlicensed carrier for hire.

An examination of the evidence does not disclose that the element of control exercised was any different whether Brown drove the company's truck tractor or his own truck tractor in pulling the company's trailer hauling the company's product to the company's customers. Certainly the company had control of its trailers, whether they were being pulled by Brown's truck tractor or one of its own truck tractors. It appears there was no definite period of employment and no definite period of contract hauling at 27½¢ per mile, but the latter was dependent upon the former. The work of delivering the company's product was an integral part of the company's business. The specific hours of em-

ployment do not appear to have been any different whether Brown was driving his own truck tractor or one of the company's vehicles. The trailers in either instance were loaded at the company's yards, at company time and expense. If Brown assisted in loading, he was paid his regular hourly rate. It also appears that if Brown were to haul the company's product, using his own truck tractor, that he would have to have his truck tractor available and attached to the company's trailer at the time it was to be loaded on company time and expense. This was an element of control which was exercised. It appears to me the company had the same right to control whether Brown drove his own truck tractor or one belonging to the company, which is the governing factor. Bernardy v. Beals, 75 N.D. 377, 28 N.W.2d 374.

For the reasons aforesaid, .I concur in the result that Brown was an employee of the company within the definition of the workmen's compensation laws when he lost his life.

EMIL A. GIESE, District Judge.

I concur in Judge TEIGEN'S special concurrence.