Ted SCHAEFER, d/b/a Fresh Air Enterprises, Appellee,

v.

NORTH DAKOTA WORKERS COMPENSATION BUREAU, Appellant,

and

Kenneth Bedor, Respondent.

Civ. No. 900243.

Supreme Court of North Dakota.

Oct. 31, 1990.

**180**

Anderson & Anderson, Bismarck, for appellee, argued by Sonna Anderson, Bismarck.

Dean J. Haas (argued), Asst. Atty. Gen., ND Workers Compensation Bureau, Bismarck, for appellant.

ERICKSTAD, Chief Justice.

The Workers Compensation Bureau [Bureau] appeals from a district court judgment reversing the Bureau's determination that Kenneth Bedor was an "employee" of Ted Schaefer, doing business as Fresh Air Enterprises [Schaefer], within the meaning of the Workers Compensation Act. We reverse the judgment of the district court and reinstate the Bureau's decision.

Schaefer was the Bismarck area distributor of the "Rainbow Household Cleaning System" [Rainbow], a multi-purpose ma-

chine that operates as a vacuum cleaner, air freshener, and humidifier. In March 1988 Bedor agreed with Schaefer to become an "independent dealer" of the Rainbow. Bedor subsequently filed an application for workers compensation benefits in connection with an alleged injury sustained on November 29, 1988, when he slipped on ice and fell while preparing for an in-home demonstration of the Rainbow.

Schaefer challenged the claim, asserting that Bedor was an independent contractor at the time of the injury rather than an employee. The Bureau held a hearing and determined that Bedor qualified as an employee of Schaefer within the meaning of the Workers Compensation Act. Schaefer appealed the Bureau's order granting employee status to the district court. The district court reversed the Bureau's decision, determining that Bedor was not an employee for workers compensation purposes. The Bureau has appealed from that judgment.

■ Under the Workers Compensation Act the relation of employer and employee must exist in order to make the provisions of the Act applicable. *Starkenberg v. North Dakota Workmen's Compensation Bureau,* 73 N.D. 234, 13 N.W.2d 395, 397 (1944). A person who is an independent contractor rather than an employee does not fall within the scope of the Act. *Starkenberg, supra.* Section 65–01–03, N.D. C.C., provides:

"*65–01–03. Person performing services for remuneration presumed an employee.* Each person who performs services for another for a remuneration, whether the same is paid as a salary, commission, or other considerations in lieu thereof, under any agreement or contract of hire, express or implied, shall be presumed to be an employee of the person for whom the services are performed, unless he shall maintain a separate business establishment or shall hold himself out to or shall render services to the general public.

"In determining whether a person is an independent contractor or employee,

the primary test to be employed is the 'right to control' test."

This court explained the right-to-control test in *Mutual Life Ins. Co. of New York v. State*, 71 N.D. 78, 298 N.W. 773, 776 (1941):

"If the person for whom the work is being done has the right of control, whether he exercise it or not, and is concerned not only with the result of the work but also with the manner and method of its doing, he is held to be an employer, and the person doing the work his employee. On the other hand, if he is concerned merely with the result of the work and has no control over the details of its doing, the person doing the work is held to be an independent contractor. It is true, of course, that in making this determination attention and consideration must be given to many elements. As, for instance, the nature of the work, where it is to be done, the terms of the contract under which it is done, whether the employment is for a stated period, or whether it is terminable at the will of the person for whom the work is being done, the manner of payment, and many other factors. But all of these things are to be considered chiefly for the purpose of determining whether in the final analysis the control of the details is in the person for whom the work is being done."

The Bureau concluded that Bedor was "an employee within the terms of the North Dakota Workers Compensation Act under the relative nature of the work test and control the details of the work test." Schaefer initially asserts that the Bureau erred in relying on the relative-nature-of-the-work test in determining Bedor's status because the only test to be used is limited by § 65–01–03, N.D.C.C., to the right-to-control test. We disagree.

Prior to 1967 this court usually stated that it was applying the right-to-control test in determining worker status. *E.g., Bernardy v. Beals*, 75 N.D. 377, 28 N.W.2d 374, 376 (1947); *Janneck v. Workmen's Compensation Bureau*, 67 N.D. 303, 272 N.W. 188, 189 (1937). In *Brown v. North Dakota Workmen's Comp. Bureau*, 152 N.W.2d 799, 803 (N.D.1967), we applied, in addition to the right-to-control test, the relative-nature-of-the-work test "in accord with the modern tendency of the courts to find employment when the work being done is an integral part of the regular business of the employer and when the worker, relative to the employer, does not furnish an independent business or professional service." The ingredients of the relative-nature-of-the-work test are described in 1C Larson, *Workmen's Compensation Law* § 43.52, at p. 8–25 (1990) [Footnote omitted], as:

"the character of the claimant's work or business—how skilled it is, how much of a separate calling or enterprise it is, to what extent it may be expected to carry its own accident burden and so on—and its relation to the employer's business, that is, how much it is a regular part of the employer's regular work, whether it is continuous or intermittent, and whether the duration is sufficient to amount to the hiring of continuing services as distinguished from contracting for the completion of a particular job."

In 1977 the Legislature amended § 65–01–03, N.D.C.C., to include the final paragraph of the statute: "In determining whether a person is an independent contractor or employee, the primary test to be employed is the 'right to control' test." 1977 N.D.Sess.Laws Ch. 579 § 3. It is evident that the Bureau, which requested the amendment, expected the amendment "to eliminate the 'relative nature of the work' test and replace it with the 'right to control test.'" Minutes of the Senate Committee on Industry, Business & Labor; Senate Bill 2158; January 19, 1977; at p. 2 (Testimony of Dick Gross, attorney for the Bureau). *See also* Drafter's Notes to Senate Bill 2158, at pp. 3–4. Assuming for purposes of argument that the Bureau's expectations are indicative of the Legislature's intent in enacting the amendment [*compare* 2A Sutherland Stat. Const. §§ 48.10, 48.12, and 48.15 (4th ed. 1984)], they are not necessarily controlling. *See Snyder's Drug Stores, Inc. v. North Dakota State Board of Pharmacy*, 219 N.W.2d 140, 147 (N.D.1974). We have said that

when a statute is clear and unambiguous it is improper for courts to attempt to go behind the express terms of the provision so as to legislate that which the words of the statute do not themselves provide. *See Peterson v. Heitkamp,* 442 N.W.2d 219, 221 (N.D.1989); *Haider v. Montgomery,* 423 N.W.2d 494, 495 (N.D.1988). In other words, the "letter of a clear and unambiguous statute cannot be disregarded under the pretext of pursuing its spirit, because the legislative intent is presumed clear from the face of the statute." *Haider v. Montgomery, supra. See also* § 1–02–05, N.D.C.C.

■ Section 65–01–03, N.D.C.C., is clear and unambiguous. A statute must be construed so that an ordinary person reading it would get from it the usual, accepted meaning. *Wills v. Schroeder Aviation, Inc.,* 390 N.W.2d 544, 545–546 (N.D.1986). The statute was amended to say that the right-to-control test is the "primary" test for determining worker status. Primary has been defined as "[b]eing or standing first in a list, series, or sequence;" "[b]eing first or best in degree, quality, or importance." American Heritage Dictionary, at p. 983 (2nd College Ed.1985). The word " 'primary' connotes the existence of plurality." *Charvoz v. Bonneville Irr. Dist.,* 120 Utah 480, 235 P.2d 780, 782 (1951). Thus, "primary" test does not mean "sole" test. *See Herbert v. Stephenson,* 184 Va. 457, 35 S.E.2d 753, 756 (1945).

Moreover, the Legislature left intact the language in the first paragraph of § 65–01–03 that a worker "shall be presumed to be an employee of the person for whom the services are performed, unless he shall maintain a separate business establishment or shall hold himself out to or shall render services to the general public." This statutory language is, in effect, a codification of the principles underlying the relative-nature-of-the-work test. *See Brown, supra;* 1C Larson, *Workmen's Compensation Law, supra,* § 43.52, at pp. 8–28—8–29. The Legislature's 1977 amendment to § 65–01–03 did not "eliminate" use of the relative-nature-of-the-work test in determining worker status.

■ We conclude that, although the right-to-control test is the primary test to be used under § 65–01–03, the Bureau is not precluded from using the relative-nature-of-the-work test as an additional aid in judging worker status, particularly when application of the right-to-control test is not clearly determinative. The Bureau did not err in using the relative-nature-of-the-work test in addition to the right-to-control test in determining Bedor's status.

Schaefer asserts that the Bureau erroneously determined that Bedor was an employee rather than an independent contractor in his business relationship with Schaefer.

■ We must affirm a decision of an administrative agency unless its findings of fact are not supported by a preponderance of the evidence or its conclusions of law are not supported by its findings of fact. *Mund v. Workers Compensation Bureau,* 444 N.W.2d 706, 709 (N.D.1989); § 28–32–19, N.D.C.C. It is well settled that in reviewing the findings of an administrative agency, this court must exercise restraint; rather than making independent findings of fact or substituting our judgment for that of the agency, we determine only whether a reasoning mind reasonably could have determined that the factual conclusions of the Bureau were proved by the greater weight of the evidence. *Kroh v. N.D. Workers Compensation Bureau,* 425 N.W.2d 899, 902 (N.D.1988). We review the Bureau's decision rather than the decision of the district court, and are limited to considering only the record compiled before the Bureau. *Satrom v. N.D. Workmen's Compensation Bureau,* 328 N.W.2d 824, 829 (N.D.1982). The Workers Compensation Act is to be construed liberally with the view of extending its benefit provisions to all who can fairly be brought within them. *Syverson v. N.D. Workmen's Compensation Bureau,* 406 N.W.2d 688, 690 (N.D.1987).

Not surprisingly, there was conflicting testimony by the witnesses in this case about the extent to which Schaefer retained the right to control the activities of his dealers. Schaefer contends that the

Bureau had an obligation to resolve this conflicting evidence "or rank the credibility of the witnesses" in its findings and conclusions. Schaefer relies on a line of cases in which we have said that the Bureau may not rely only upon that part of inconsistent medical evidence which is favorable to the Bureau's position without attempting to clarify the inconsistency. *E.g., Moses v. N.D. Workers Compensation Bureau,* 429 N.W.2d 436, 438–439 (N.D.1988); *Syverson, supra; Satrom, supra,* 328 N.W.2d at 832; *Claim of Bromley,* 304 N.W.2d 412, 416–418 (N.D.1981).

■ These cases generally address issues of causation where the specialized knowledge held by presumably unbiased medical experts is usually essential to assist the Bureau in making a determination. We have said that the credibility of witnesses is primarily within the Bureau's purview [*Inglis v. North Dakota Workmen's Compensation Bureau,* 312 N.W.2d 318, 323 (N.D.1981) ], and that the Bureau "may refuse to give credence to the testimony of any witness when it appears that there are matters which impair its accuracy." *Ehli v. N.D. Workers Compensation Bureau,* 447 N.W.2d 313, 317 (N.D.1989). We decline to extend the principle applied where inconsistent medical evidence is present to every factual discrepancy that might arise from the testimony of interested nonexpert witnesses. Nor do we believe that specific findings which "rank the credibility of the witnesses" are required in such a case.

The Bureau found that:

"Fresh Air Enterprises had the right to control the details of [Bedor's] work, although that right was not exercised fully. The sales staff was dependent upon Fresh Air Enterprises for services, and subject to discipline of Fresh Air Enterprises. Fresh Air Enterprises derived a large share of its income through the efforts of its sales staff, and had an obvious interest in managing that resource efficiently and retaining the right to control its staff."

■ The record reflects that between 15 and 20 "independent dealers" sold the Rainbow for Schaefer. The dealer contracts Bedor and others entered into with Schaefer designated their relationship as that of "an Independent Dealer and not an employee or representative of ... Schaefer." Schaefer required the dealers to sign these contracts in order to sell the Rainbow. Schaefer employed three "telemarketing" people to assist the dealers in setting their appointments for in-home demonstrations. Schaefer provided professional training sessions for his dealers and provided sample scripts for arranging demonstrations of the Rainbow. While dealers were free to obtain their own sales leads, Schaefer obtained leads which he shared with the dealers. The dealers were encouraged through the payment of bonuses to turn in leads to Schaefer and to attend daily morning sales meetings. Bedor testified that "[i]t was stated numerous times that you had to be [at the sales meetings] if you wanted your leads or another show set for you.... If you didn't show up you got hollered at."

The Rainbows that Bedor used in demonstrations and ultimately sold were owned by Schaefer and consigned to Bedor. Bedor was compensated through commissions on the sales. The recommended sale price of the Rainbow was $1,140. Through most of his business relationship with Schaefer, Bedor was allowed to keep as a commission from a sale any amount over the $650 consignment price of the machine. On occasion, Schaefer allowed dealers to take trade-ins for the Rainbow, but if the cash price was less than the $650 consignment price, the dealer was required to contact Schaefer to determine the value of the trade-in. Schaefer kept the profits from the resale of any trade-ins. Schaefer also offered through the dealers financing services for buyers of the Rainbow. Schaefer required dealers to call into his office at the beginning of in-home demonstrations "to make sure that the customer is not sitting there waiting and wondering if somebody shows up or not." Schaefer also encouraged dealers to call into the office after a demonstration if the dealer needed assistance in closing a sale.

Schaefer had the right to terminate his business relationship with any dealer at any time upon one day's notice. Schaefer terminated his business relationship with Bedor in January 1989. According to Bedor, Schaefer would also discipline the dealers for violating orders. Bedor testified that "[y]ou were told that you had a specific set of examples, ... you followed orders exactly if you deviated from that example you got a reprimand." Schaefer also testified that "if we have a couple customers complain you bet I jump on that right now," and that if dealers failed to show up at in-home demonstrations "a few times I more than likely let them go."

Schaefer asserts that the contractual designation of independent contractor should be binding on the parties. The Bureau determined that the dealer contract was a "contract of adhesion." Regardless of whether the dealer contract was a contract of adhesion, a statement in a contract that the parties intend the relationship of independent contractor and not employee "is ordinarily of very little importance as against the factual rights and duties [the parties] assume." 1C Larson, *Workmen's Compensation Law, supra,* § 46.30, at p. 8–258 [Footnote omitted]. *See also Fleck v. Jacques Seed Co.,* 445 N.W.2d 649, 651 (N.D.1989); *Belgarde v. Rosenau,* 388 N.W.2d 129, 130 (N.D.1986). We believe the dealer contract in this case is of little significance when weighed against the actual circumstances in light of the workers compensation statutes referred to earlier herein.

Schaefer also asserts that Bedor was an independent contractor because he exercised no control over Bedor's work hours, sales territory, or his dress and Bedor furnished his own vehicle and was not compensated for oil, gas, mileage, insurance, or telephone calls. While these factors weigh in Schaefer's favor, they are not necessarily determinative when considered with the other evidence in this case. *See Brown,*

*supra.* The record shows that Schaefer not only had the right to discipline the dealers but to terminate his business relationship with them at any time without liability. He also had the right to control numerous aspects of the actual sales of the Rainbow to customers. Schaefer's control over the dealers ranged from training them to be Rainbow salespersons to facilitating the financing and closing of the sales.

Having reviewed the entire record, we believe that a reasoning mind reasonably could have determined that Schaefer's right to control the details of Bedor's work was proved by the greater weight of the evidence.

Even if the result under the right-to-control test were not clearly determinative, we agree with the Bureau that Bedor was an "employee" under the relative-nature-of-the-work test. Bedor derived most of his income from being a dealer for Schaefer and did not sell competing products. Bedor worked for Schaefer on a continuous, rather than an intermittent, basis. The testimony showed that the dealers are integral to Schaefer's business and profits. Bedor, relative to Schaefer, did "not furnish an independent business or professional service." *Brown, supra,* 152 N.W.2d at 803. Under these circumstances, the Bureau did not err in determining that Bedor was an "employee" for workers compensation purposes.

Accordingly, we reverse the judgment of the district court and reinstate the decision of the Bureau.

VANDE WALLE, GIERKE, MESCHKE and LEVINE, JJ., concur.